### STATE BANK OF CHICAGO et al. v. HILLMAN'S.

(Circuit Court of Appeals, Seventh Circuit. June 10, 1910.)

No. 1,629.

1. PATENTS (§ 165*)—SCOPE—DESCRIPTION OF INVENTION.

A patentee cannot describe something to the world in his letters patent that means just that thing or its equivalent, and, having claimed that, claim in addition something not thus described and not equivalent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. § 165.*]

2. PATENTS (§ 328*)—INFRINGEMENT—CURTAIN-STRETCHER.

The Mayr patent, No. 705,857, for a curtain-stretcher, is limited by the description and drawings to a stretcher the bars of which are "adapted to fold in the same plane." As so construed, held not infringed.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Suit in equity by the State Bank of Chicago, Walter A. Mayr, Charles G. Carlson, and the Chicago Curtain Stretcher Company against Hillman's, a corporation. Decree for defendant, and complainants appeal. Affirmed.

The appeal is from a decree dismissing the bill for want of equity. The bill was to restrain the infringement of letters patent No. 705,857, issued July 29, 1902, to Walter A. Mayr, for a curtain-stretcher. The material descriptive portion of the patent is as follows:

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

"My invention relates to curtain-stretchers; and the object thereof is to provide a curtain-stretcher having a center brace, the side bars and brace being so constructed that they may be folded together intact, a further object being to provide a curtain-stretcher of the greatest efficiency with a minimum cost of manufacture. I attain these objects by the construction illustrated in the accompanying drawings, in which—

"Figure 1 is a front view of a curtain-stretcher constructed according to my invention. Fig. 2 is a view of the center brace and side bars folded and illustrating the operation of unfolding. Fig. 3 is a rear view of a curtain-stretcher, showing a modified form. Fig. 4 is a view illustrating the operation of the same in folding or unfolding; and Fig. 5 is a rear view of the bars folded, as in Fig. 2, but showing another modified form.

"In the accompanying drawings the several parts of my improved curtain-stretcher are indicated by numerals of reference, and in the practice of my invention I provide a center brace 6, which may be slotted at one end, as shown at 7. On the unslotted end I secure a plate 8, proportioned in length to the width of the side bars, and on the slotted end I secure a plate 9 of greater length than the plate 8 and also proportioned in length to the width of the side bars. To the plate 8 I pivotally secure two similar bars 10, having rounded corners, as shown at 11, the said bars being so pivoted on the plate that when the bars are extended the ends 12 will bear against each other and prevent the bars swinging around backward. To the plate 9 I pivotally secure two similar bars 13, having rounded corners 14 and flat ends 15, and the bars 13 are pivoted on the plate 9, so that the flat ends will bear against each other when the bars are extended the same as the ends 12 of the bars 10; but the pivotal points of the bars 13 with the plate 9 are at a greater distance from the center of the plate longitudinally than the pivotal points of the bars 10 with the plate 8, the distance being proportioned to the width of the bars. The ends of the bars 10 and 13 are slotted, as shown at 16 and 17, and end bars 18 and 19 are mounted on these slotted ends in a manner well known or in any suitable manner.

"In operation when it is desired to fold the curtain-stretcher for storage the end bars 18 and 19 are removed. The bars 10 are then turned inwardly parallel with the brace and above the same, the ends being sprung upward over the top of the bars 13, as indicated in Fig. 2, the bars 13 being indicated by dotted lines. The bars 13 are then folded outside of the bars 10, as shown in full lines in Fig. 2, and lie in the same plane when folded.

"In explanation of the above operation it may be stated that in practice it is customary to make both the bars and brace of considerable length, and they are usually made of light material, so that the ends of the bars 10 may be sprung up sufficiently to allow the hinged ends of the bars 13 to pass in under the same, or the free ends of the bars 10 may be sprung up and then may be turned outward over the bars 13, forcing the free end of the bars 13 downward until the bars 10 are in an open position, when the bars 13 may be turned outward. Thus owing to the lightness of the material used usually in making these curtain-stretchers either the bars 10 or bars 13 can be opened first. This can only be done, however, by springing the free ends of the bars out of the normal plane, and when folded the hinged ends of the bars 13 will bear against the free ends of the bars 10 by reason of the fact that they lie in the same plane, and both sets will be held against unfolding without any other fastening means.

"In Figs. 3 and 4 I have shown a modified form of construction in which provision is made to open the bars and close them without springing the ends as previously described. In this construction the brace 6' is made longer, as well as the slot 7', and when it is desired to fold the bars the thumb-nut 20 is loosened and the plate 9 is slid back along the brace to the position shown in Fig. 4, when they may be readily folded together, after which the plate 9 may be slid back until the ends of the bars are all even, when the nut may be again clamped, thereby clamping all the parts together, as will be readily understood.

"In Fig. 5 I have shown bolts and winged nuts 21 to secure the plats 8' and 9' to the respective bars instead of rivets, and these nuts may be turned down to clamp the bars either in an open or closed position."

The drawings are as follows:

Fig. 1

Fig. 3

Fig. 2

Fig. 4

Fig. 5

The claims relied upon are 2, 3, 5, 6 and 9 as follows:

"2. In a curtain-stretcher, a center brace, a plate secured to one end thereof, a plate adjustably secured to the other end of said brace, and jointed side bars pivotally connected with said plates respectively and both retained in pivotal connection in an extended and folded position for the purpose set forth.

"3. In a curtain-stretcher, a center brace slotted at one end, a plate secured to the unslotted end, a plate adjustably secured to the slotted end by a bolt and winged nut, and jointed side bars pivotally connected with said plates and both retained in pivotal connection in an extended and folded position, as and for the purpose set forth."

"5. In a curtain-stretcher, a center brace, a plate connected with each end thereof, jointed side bars pivotally connected with said plates and both retained in pivotal connection in an extended and folded position, said side

bars having rounded inner corners and flat ends, as and for the purpose set forth.

"6. In a curtain-stretcher, a center brace, a plate adjustably secured to one end thereof, a plate secured to the other end thereof, a side bar composed of two pieces pivotally connected with each of said plates and both retained in pivotal connection in an extended and folded position, the abutting ends of said pieces having rounded inner corners and flat ends, as and for the purpose set forth."

"9. The combination in a curtain-stretcher of two end bars, two side bars each of which is composed of two pieces, a center brace-bar pivotally connected with said side bars at each end, and both retained in pivotal connection in an extended and folded position, each of the two pieces composing said side bars having rounded corners whereby they may be folded inward upon said center brace-bar, as and for the purpose set forth."

Claim 1 will stand as an illustration of claims 4, 7 and 8 in their differentiation from the claims relied upon, and is as follows:

"1. In a curtain-stretcher, a center brace, side bars pivotally connected with each end thereof, said side bars being jointed and adapted to fold in the same plane upon said brace while retained in pivotal connection with each end thereof, one of said side bars being longitudinally adjustable on said brace, as and for the purpose set forth."

Further facts are stated in the opinion.

Edward Rector and Wm. R. Rummler, for appellants.
Marcellus Bailey, for appellee.

Before GROSSCUP, BAKER and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge, after stating the facts as above, delivered the opinion.

The curtain-stretcher put upon the market by appellee and sold in very great numbers is identical with the curtain-stretcher that the appellants sell. If, therefore, the curtain-stretcher that appellants put upon the market be within the Mayr patent, and the Mayr patent be valid, a case of infringement is made out.

The descriptive portion of the patent shows a brace, on the one end of which is a plate pivotally connected with one set of side bars, and on the other end another plate, greater in length however, pivotally connected with the other set of side bars; each plate proportioned in length to the width of such bars; the difference in the length of the plates being intended to give room to the bars, edge to edge, when folded in the same plane after use; the close pivoting on the shorter plate being overcome by the bars being made of such light material that the free ends of one set of bars may be sprung up sufficiently to allow the pivoted ends of the other set of bars to pass under in the process of taking their place in the "normal plane." Such plates, of differing length, such bars, and such operation, unquestionably, were what was in the mind of the inventor when the description was drawn. Nothing other than plates of differing length, bars pivotally joined, or the springing method of getting into place, appears from the description to have been in mind. In the absence of the fact that, in the claims sued upon, the phrase "to fold in the same plane upon said brace" was omitted, no one would conceive that the patentee intended anything else than what has just been described.

The curtain-stretcher put upon the market by appellants, however,

does not correspond to this description. Instead of the plates being of differing length, and so proportioned that when the stretcher is folded the bars will be in a single plane, appellants' commercial curtain-stretcher contains brace plates of the same length; and instead of both side bars being pivotally connected upon the plate (that is, closely connected), the slot is used to give a loose adjustment, so that when folded up, instead of being in a single plane, the bars can be in two separate planes, lying with their sides upon each other, and without utilizing the springing quality of the material at all. And this, though absent from the description, is said to be contained in the claims sued upon. The question of law presented, then, is this: Can the patentee rightfully include in his claims something that does not emerge from the description? Can a patentee describe something to the world in his letters patent that means just that thing or its equivalents and nothing else, and, having claimed that, claim in addition something not thus described and not its equivalents?

We think not. The description is required to set forth the invention in such full, clear, concise and exact terms as to enable any person, skilled in the art to which it appertains, or with which it is most nearly connected, to make and use the same; and the claim is to enable the public to know the bounds and scope of the invention "thus disclosed"; but "any claim which is broader than the described invention, is void; even where that invention is valuable, and could have supported a valuable claim." Walker on Patents (4th Ed.) § 177, citing Edison v. American Mutoscope Co., 114 Fed. 934, 52 C. C. A. 546.

There is nothing in Winans v. Denmead, 15 How. 330, 14 L. Ed. 717, or the Paper Bag Patent Case, 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122, brought to our attention since the argument, nor in any of the rules of law cited ("that the claims of every patent should be construed, if possible, to cover and protect the actual invention made by the patentee, and should not be restricted to the particular form of device disclosed in his patent, if other forms may embody it," or that "the patentee's claim is the 'measure of his invention,' " or that "where the claims of a patent are clear and unambiguous, there is no room for construction") that contravenes what has just been said; for what is said in both of these cases, and in all of these rules, is based on the fact that the inventive concept is disclosed in the description, whatever may have been the mechanical form that such concept subsequently took. Certainly it was not intended by these cases or these rules that an inventive concept, that is separate and apart from the one embodied in the description, should become a part of the patent simply by being included in the claims.

The concept contained in the description of the letters patent before us is a curtain-stretcher, the bars of which, when folded, will lie in the same plane. That concept runs throughout the whole description. Both the advantage of the invention and its means of operation are confined to that concept. "By reason of the fact that they lie in the same plane," says the description, "both sets will be held against unfolding without any other fastening means." Now, the stretcher actually put upon the market, different from this, is clearly an afterthought. And the mere omission of the words "adapted to fold in the same plane,"

in the claims sued upon, cannot be held to show a concept in the description different from the one to which the description is confined

The decree of the Circuit Court is affirmed.

NOTE.—The following is the opinion of Kohlsaat, Circuit Judge, in the trial court:

KOHLSAAT, Circuit Judge. Complainants seek to have defendant enjoined on final hearing from infringement of claims 2, 3, 5, 6, and 9 of patent No. 705,857, granted to complainant Mayr, July 29, 1902, on application filed November 16, 1901, for a curtain-stretcher. The claims in suit read as follows, viz.:

"2. In a curtain-stretcher, a center brace secured to one end thereof, a plate adjustably secured to the other end of said brace, and jointed side bars pivotally connected with said plates respectively and both retained in pivotal connection in an extended and folded position for the purpose set forth.

"3. In a curtain-stretcher, a center brace slotted at one end, a plate secured to the unslotted end, a plate adjustably secured to the slotted end by a bolt and winged nut, and jointed side bars pivotally connected with said plates and both retained in pivotal connection in an extended and folded position, as and for the purpose set forth."

"5. In a curtain-stretcher, a center brace, a plate connected with each end thereof, jointed side bars pivotally connected with said plates and both retained in pivotal connection in an extended and folded position, said side bars having rounded inner corners and flat ends, as and for the purpose set forth.

"6. In a curtain-stretcher, a center brace, a plate adjustably secured to one end thereof, a plate secured to the other end thereof, a side bar composed of two pieces pivotally connected with each of said plates and both retained in pivotal connection in an extended and folded position, the abutting ends of said pieces having rounded inner corners and flat ends, as and for the purpose set forth."

"9. The combination in a curtain-stretcher of two end bars, two side bars each of which is composed of two pieces, a center brace bar pivotally connected with said side bars at each end, and both retained in pivotal connection in an extended and folded position, each of the two pieces composing said side bars having rounded corners whereby they may .be folded inward upon said center brace bar, as and for the purpose set forth."

The main difference between the claims sued on and those not sued on consists in the omission from the former of the provision requiring the device to be "so constructed as that it shall be adapted to fold in the same plane." This clause, defendant insists, should be read into all the claims. Complainant's commercial device does not conform to this description. The only stretcher covered by the drawings and specification consists of two side bars slotted at their outer ends, supported by a center bar or brace, and two end bars or braces, all slotted at their ends next the upper side bar, as shown in the drawings, whereby the size of the frame may be varied. These side bars are each in two parts, or sections, pivotally secured to plates, one which is rigidly attached to the lower end of the middle brace at the longitudinal center of said lower side bar, the other having movable or floating connection with the slot in the upper end of said center bar, wherein its upward and downward movement in the slot are made rigid at will by means of a set screw. This upper plate, as stated, is made wider than the lower plate, and when moved in the slot carries the pivoted sections of the upper side bar with it. The outer ends of the upper side bar move correspondingly in the slots formed in the end bars. Whenever it is desired to narrow the frame, the end braces or bars are moved toward the center in the slots provided in the side bars for that purpose, and likewise fixed at desired points by set screws. By reason of the greater width between the pivotal connections of the sections of the upper side bar, those sections are shown to fold downwardly, so as to inclose in the same plane the upwardly folded sections of the lower side bar, edge to edge. Of course, it is a matter of indifference as to which plate is the wider. The upper is taken for the purpose of illustration, merely, in the drawings. Defendant's device, as well as complainant's commercial sketches, do not employ

180 F.—47

the plates of different width. Therefore, if it be an essential feature of the patent in suit that the side bars be folded in the same plane, defendant cannot be held to infringe, since his device is not adapted to be, and is not, folded in the same plane.

The curtain-stretcher art is an old one, and analogous to quilting and other stretcher arts. The patent in suit had a hard struggle in the Patent Office, mostly in overcoming the provisions of patent to Whipple, No. 680,301, granted August 13, 1901, for quilting frames. It is claimed by complainant that the examiner's objections were overcome after several attempts by the addition of words providing for a device wherein the sections of the side bar should, respectively, remain in pivotal connection with the several plates at all times, whether open or folded. An examination of the file wrapper and contents leaves the court in doubt as to whether this change in wording, or persistent insistence won the day. The claims in suit do not call for adaptability to being folded in the same plane. Nothing is said in them about folding. Indeed, it is not disclosed how the device of the claims in suit could be folded, in the absence of drawings and specification. The sections of the side bar as described in the claims must inevitably obstruct each other in folding.

This device seems somewhat at variance with the stretcher covered by the patent. If, however, it be conceded that complainant is entitled to a stretcher which employs plates of equal length at both ends of the center brace, it becomes necessary to look into the prior art to ascertain whether there be any novelty in maintaining pivotal connection between the side bar sections and the several plates upon the center brace. The prior art, in this respect, is fairly summed up in the Whipple stretcher, as shown in figure 5 of the drawings accompanying Whipple patent No. 655,038, granted April 7, 1885. Substantially the only difference between this latter stretcher and that now claimed by complainant consists in the means employed for securing pivotal connection of the side bar sections with the plate located near the end of the center brace.

For the purpose of insuring freedom of action in folding the sections, or arms, the plate is provided near its ends with diagonal pivot slots through which the pivot moves, thus making it possible to withdraw the point of the pivoting away from the center of the plate. The side sections may in this way be raised into, or lowered from, an end to end alignment without undue frictional interference with each other. This result is attained in the patent in suit by rounding the corners of the ends of the bars or sections of the side bar adjoining the center brace. This would seem to be the equivalent of the pivot slot of the Whipple patent above referred to. In both devices, the arms or sections of the side are in constant pivotal connection with the plate upon the center brace; the one, more convenient than the other perhaps, but to all intents and purposes the same. That the Whipple device shows the operation as to one side bar does not change the situation. Both require the clamping of set screws to hold them in place. The rounding of the corners above spoken of is found, but not claimed, in the Carlson patent No. 701,014. This patent discloses a stretcher which folds in practically the same manner as does defendant's and complainant's commercial device.

From the file wrapper and contents it appears that the patent in suit was not cited by the examiner in connection with the granting of this patent, although it was pending at the same time and granted prior to the issue of the patent in suit upon an application filed subsequent to the filing of the application for the patent in suit. It is also found in patent No. 314,997, granted to Camp on April 7, 1885, for a cot.

There is no merit in complainant's contention that the term "pivotally connected," as used in the claims in suit, is not broad enough to include what they term the shifting oscillating connection of the bolts in the slots $f^4$ and $f^5$ of the Whipple device. Pivotal connection does not necessarily mean that the pivot shall be permanently located or fixed. The Whipple arrangement is clearly a pivotal connection. If the specification and drawings are to be resorted to, they call for a stretcher which is so constructed that it will fold in the same plane. The same construction which is asked for by complainant as to the claims in suit—i. e., that folding in the same plane is not contemplated therein—would eliminate the rounded corners and flat ends from claims 2 and 6, since they are not therein mentioned. These claims, if so construed, would

read exactly upon the Whipple patent. If the diagonal plate slot of Whipple is the equivalent of the rounded inner corner and flat end of claims 5, 6, and 9 in suit, and of each thereof, then the same is true of these claims. Unless the claims in suit are limited to stretchers so constructed as to fold in one plane, they are deemed to be anticipated by the prior art. If they be so limited, defendant does not infringe.

The bill is dismissed for want of equity.