AMERICAN AIR CLEANING CO. v. GENERAL COMPRESSED AIR & VACUUM MACHINERY CO. et al.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1912.)

No. 1,740.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PNEUMATIC CARPET RENOVATOR.

The Thurman patent, No. 634,042, for a pneumatic carpet renovator, claim 1, in view of the proceedings of the Patent Office and of the prior art, must be limited to the precise combination described therein. As so construed, *held* not infringed.

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PNEUMATIC CARPET RENOVATOR.

The Thurman patent, No. 690,084, for an improved handle for a pneumatic carpet renovator, claims 5 and 6, in view of the limiting words "substantially as described" therein, and the statement made in the spec-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ification of the nature and scope of the invention, and especially in view of the prior art. must be limited to a structure which will accomplish the stated objects of the invention in substantially the manner described in the specification. As so limited, *held* not infringed.

Appeal from the Circuit Court of the United States for the Eastern District of Wisconsin.

Suit in equity by the General Compressed Air & Vacuum Machinery Company and John S. Thurman against the American Air Cleaning Company. Decree for complainants (177 Fed. 272), and defendant appeals. Reversed.

See, also, 125 Fed. 761, 60 C. C. A. 529.

Appellees' decree sustaining the validity and adjudging infringement of claim 1 of patent No. 634,042, October 3, 1899, to Thurman, for a pneumatic carpet-renovator, and of claims 5 and 6 of patent No. 690,084, December 31, 1901, also to Thurman, for an attachment for pneumatic carpet-renovators, is attacked solely on the ground that the finding of infringement is erroneous.

I. Figure 1 of patent No. 634,042 is as follows:

In the specification the applicant said:

"The invention may be said to consist, briefly. in a pneumatic dust-extractor designed to be placed over or in close proximity to the carpet whereby an air-blast is projected into and through the carpet, forcing the dust out into the collector, where it accumulates and is subsequently removed.

"The essential features of my invention reside in the arrangement of a device on the end of a flexible hose leading from some suitable source of compressed-air supply, said device consisting in the combination of a suitable casing, an air-nozzle arranged at an angle in said casing, so as to project an air-blast at an angle onto or into and through the carpet, a suitable housing provided on said casing surrounding said air-blast, so as to collect the dust-laden air and conduct it into a suitable chamber, where the dust may be deposited, after which the air, thus relieved of its heavier particles of dust, is forced through a tortuous passage, which tends to relieve the air of its dust, said air finally escaping in practically a purified state into the room.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"This blast-nozzle D is arranged at an angle, as shown.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"In operation the valve J is raised in proportion to the volume of dust-laden air entering chamber H and tends to deflect the dust-laden air inwardly and downwardly in said chamber, as indicated by the arrows, so that the dust-laden air is given somewhat of a whirling motion, whereby the particles of dust in the air are thrown downwardly by centrifugal action and deposited in the bottom of the chamber.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"In operation, assuming that pipe G is properly connected to a source of compressed-air supply, the device is placed in position on the carpet and valve F opened, which causes a blast of air to be ejected from nozzle D at an angle onto the carpet or down into and through the carpet, which air dislodges th--

dust and carries it upwardly through space $I$ beyond the valve $J$ and into chamber $H$, where the air is relieved of its greatest portion of dust, after which the air is forced to travel the tortuous passage resulting from the arrangement of walls $K$, $L$. $M$, $N$, and $O$, and in making its turns around the ends of walls $L$ and $N$ will deposit the remaining particles of dust in the pockets $b'$ and $b''$. The purified air finally escapes through the orifice $o$ in the cover of the casing."

Claim 1 reads thus:

"1. In a renovator, the combination with a suitable casing open at its bottom, the walls of said casing extending down to engage the article to be cleaned or renovated, so that said article practically forms a bottom for the opening in the casing, of a nozzle carried by said casing and arranged to one side of said opening for discharging air under pressure at an angle, and in a definite direction through the bottom of said casing, a passage for the dust-laden air leading up from the opening in the bottom of the casing at a point opposite the nozzle, said passage communicating with a chamber in the casing, into which chamber said passage enters tangentially, and a pressure-supply pipe connected to said nozzle; substantially as described."

Applicant first claimed:

"1. In a renovator, the combination, with a flexible hose for conducting compressed air, of a nozzle arranged on the end of said hose, and a casing forming a chamber into which the dust-laden air is received; substantially as described.

"2. In a renovator, the combination, with a suitable casing, of a nozzle carried by said casing for discharging air under pressure at an angle through the bottom of the casing, a supply pipe connected to said nozzle, and a chamber within the casing for receiving the dust-laden air; substantially as described."

These were rejected on reference to patent No. 521,174, June 12, 1894, to Nation, for a carpet cleaner.

Applicant then canceled said claims 1 and 2, and in lieu thereof submitted this:

"1. In a renovator, the combination with a suitable casing open at its bottom, the walls of said casing extending down to engage the article to be cleaned or renovated, so that said article practically forms a bottom for said opening in the casing, of a nozzle carried by said casing for discharging air under pressure at an angle through the bottom of the casing, and to one side of said opening, said casing also containing a chamber into which the opposite end of the opening receiving the blast of air, leads, and a supply pipe connected to said nozzle; substantially as described."

And in support of the proposed amendment he urged:

"This claim is allowable over the references cited, for the reason that the patent to Nation shows the blast directed straight down midway through the opening in the bottom of the casing, whereas, by applicant's construction a definite direction is given to the blast to carry the dust into the chamber."

This amendment was rejected on renewed reference to Nation, with the statement that "to change slightly the direction of blast requires no invention."

Thereupon applicant substituted claim 1 as allowed, with an assertion that "the above claim clearly avoids the reference to Nation, and is limited to details of construction which are absolutely new."

These parties (or predecessors in interest) had a former controversy in which the present appellant sued appellees for alleged infringement of the Nation patent. This court held (125 Fed. 761, 60 C. C. A. 529) that in view of the prior art the Nation patent was invalid, and also that, if valid, it was not infringed by the Thurman device there in suit.

Nation's cleaner is shown in the patent drawing as follows:

*Fig. 2.*

Thurman's renovator, alleged in the former litigation to be an infringement of the Nation patent, is illustrated in the subjoined cut:

II. The improved handle of patent No. 690,084 is thus exhibited in figures 2 and 4 of the drawings.

The specification describes the invention as follows:

"This invention relates to a new and useful improvement in attachments to pneumatic carpet-renovators, the objects being to pivotally mount the handle on the renovator-casing, by which handle the renovator is moved backward and forward over the carpet to be cleaned, provision being made whereby said handle may be adjusted and locked in adjusted positions, so as to lift one edge of the renovator-casing off of the carpet being cleaned. It has been found by experience that the ordinary form of pneumatic carpet-renovator will not effectually remove the dirt from carpets which have remained on the floor for a number of years, so that accumulated dirt has caked therein, because part of the air-blast which is directed at an angle down into and through the carpet instead of lifting the dirt and carrying it up into the collecting-chamber of the renovator will be deflected laterally and pass out under the edges of the casing into the room, carrying with it particles of dust. By lifting one edge of the casing, and particularly the rear edge thereof behind the nozzle through which the blast of air is emitted, a suction is formed behind the blast of air, which suction induces a circulation of air in the direction of the blast, and the induced air will flow in from the rear and side edges of the casing, and so prevent the dust-laden air from issuing at these points.

"With these objects in view the invention consists in the construction, arrangement, and combination of the several parts, all as will hereinafter be described and afterward pointed out in the claims.

\*    \*    \*    \*    \*    \*    \*    \*    \*

"Yoke D is provided with depending perforated lugs or ears d', in which is mounted a roller G. The forward ends of the yoke D preferably pass on each side of the renovator-casing between stop-lugs a''. As shown in Fig. 4, the casing is provided with a pocket or recess a''', in which is located the

spring-pressed ball $a''''$, said ball co-operating with recesses $d''$ in the inner faces of the prongs of the yoke, which recesses are so arranged and located that they will co-operate with the spring-pressed ball when the handle and its connected yoke are adjusted to different positions, this ball-and-recess construction locking the handle in such adjusted positions and preventing accidental displacement. As shown in Fig. 1, the spring-pressed ball co-operates with the lower recesses of the yoke, in which event the renovator can be used in the usual manner; that is, the lower face thereof contacts with the carpet to be cleaned, so as to completely inclose the air-blast. In Fig. 2 the handle has been depressed, so that spring-pressed balls, there being one such ball on each side of the casing, are received in the upper recesses $d''$, in which event the roller 'G is brought into contact with the carpet to be cleaned by projecting below the rear edge of the casing, so that the rear edge of the casing is elevated. In this position of the renovator the air-blast is directed forwardly and upwardly, with its charge of dust, through the passage $a$ and induces an inward circulation of air from the exterior under the side and rear edges, so that notwithstanding the caking of the dirt in the carpet there will be no tendency of the dust-laden air to pass out under the side edges. With respect to the forward edge it will be noted that the entire weight of the renovator is supported at two points, the roller $G$ being one and said forward edge the other, and therefore the forward edge of the casing makes closer contact with the carpet and prevents the dust-laden air from escaping thereunder.

"This is obvious when it is considered that when the parts are in the position shown in Fig. 1 the great area of the entire bottom face distributes the weight of the device evenly thereover, and consequently the contact of the lower face with the carpet is not as good at any point as it is along the edge of the front wall when the roller is utilized to elevate the rear edge of the renovator."

Claims in suit are in these words:

"5. The combination with the pneumatic carpet-renovator having a blast-nozzle, of a pivoted handle provided with a passage for the supply of compressed air to said nozzle, and a flexible connection between said handle and said nozzle, substantially as described.

"6. The combination with a pneumatic carpet-renovator having a blast-nozzle, of a yoke pivoted to said renovator, an operating-handle mounted upon said yoke and provided with a passage for supplying compressed air to the nozzle, and a flexible connection between said operating-handle and said nozzle, substantially as described."

Appellant's pneumatic carpet-renovator has a yoke pivoted to the casing, an operating handle mounted upon the yoke and provided with a passage for supplying compressed air to the nozzle, and a flexible air-conduit between the handle and the nozzle.

Prior art references, to limit said claims 5 and 6, include patent No. 614,-832, November 29, 1898, to Burger, for a machine for cleaning fabrics. Figure 2 gives a bottom view of the Burger structure.

*Fig. 2.*

Charles A. Brown and F. E. Dennett, for appellant.
Edward E. Longan, for appellees.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). [1] I. Patent No. 634,042. No review of the prior art (beyond a reference, possibly, to the statement in the former litigation between these parties, reported in 125 Fed. 761, 60 C. C. A. 529) is needed to appreciate the narrowness of claim 1; for not only does the language of the claim particularize the elements by description of function and location, but the file-wrapper clearly discloses the tight place that the applicant squeezed through. Rejection of original claims 1 and 2, which would easily have dominated appellant's structure, was received with acquiescence. In support of the first substitute for these claims an attempt was made to differentiate from Nation by stating that:

"Nation shows the blast directed straight down midway through the opening in the bottom of the casing, whereas by applicant's construction a definite direction is given to the blast to carry the dust into the chamber."

But the office replied in effect, No, you must limit your claim more closely to your specification; to change slightly the direction of the Nation blast, which is directed straight down midway through the opening, requires no invention. So the applicant amended again and procured the allowance of his second substitute by making limitations in two respects: First, the nozzle. It must be located, not midway of the opening through the bottom of the casing, but in the casing, "to one side of said opening"; and, further, the change of angle from Nation's perpendicular is not slight. It is material and has an important function. The nozzle must be arranged at an angle "substantially as described," "so as to project an air-blast at an angle onto or into and through the carpet," whereby the dust-laden air may be forced out through the passage at the opposite side of the opening. Second, the "tangential" passage into the dust-receiving chamber. While the use of "tangential" may not be mathematically accurate, this limitation in the claim refers unmistakably to that curved construction of the passageway, particularly described in the specification and pictured in the drawing, "whereby the particles of dust in the air are thrown downwardly by centrifugal action and deposited in the bottom of the chamber." Now, appellant's cleaner has neither of these essential elements of the claim. Its nozzle is located "midway of the opening" in the bottom of the casing, and the blast is "directed straight down"; both of those particulars being the very ones on account of which Thurman distinguished the machine of his claim 1 from the Nation patent. Appellant's cleaner also manifestly lacks the curved or "tangential" passageway into the dust-receiving chamber, whereby "centrifugal action" throws the dust downwardly upon the bottom of the chamber.

Appellees have placed their main reliance upon an argument which would be passed unnoticed except for the fact that it seems to have been accepted by the Circuit Court as the basis for the decree. Skel-

etonized it is this: In the Nation suit Thurman claimed that his alleged infringing device was made in accordance with his patent now in suit. His alleged infringement was found to proceed upon a different theory of operation from that of the Nation patent. We said:

"Except for convenience of manufacture, the nozzle, instead of being cast in one piece with the hood, might be made separately and bolted to the outer wall of the hood. The air is discharged into and through the carpet outside of the hood, and reaches the hood by reason of being deflected forward at an angle from the floor, and is aided in this course by the forward lip's being narrower than the rear lip of the orifice. If the nozzle, the orifice being in the same loca-. tion relative to the hood as now, were directed rearwardly at an angle of 45 degrees, the air, as the machine moved forward, would escape under the rear lip, up through the carpet, into the room. As it is, the air escapes under the forward lip, up through the carpet, into the hood. * * * If Nation's air-blast penetrates the carpet and rebounds from the floor, it is an incident, and not an essential, of the device's operation. The air is discharged within the hood. It is true that the height of the orifice above the plane of the base is left by Nation to the builder's discretion. But it is an essential condition that the orifice be within the hood and opposite (which cannot be in the same plane with) the opening in the base through which the air blast reaches the carpet. In Thurman's machine it is an essential condition of operation that the air be discharged into and through the carpet, outside of the hood. It reaches the hood only after striking the floor and passing up through the carpet."

This was an adjudication, the argument proceeds, of the nature and scope of the Thurman patent. If it is found in the present suit that appellant, owner of the Nation patent, has departed from its teachings and has adopted the principle of operation of Thurman's alleged infringing device in the Nation patent suit, then Thurman's patent is infringed. Therefore the only inquiry in this court is whether the Circuit Court correctly answered the question, "Is defendant's (appellant's) device a physical embodiment of the Nation patent?" A more obvious non sequitur could hardly be framed. In the Nation suit and in this, as in all other infringement suits, the questions (the validity of the claims being admitted) are two: What is the scope of the claims? Does the alleged infringing device (no matter what assertions are advanced that it was made under patents, prior or subsequent) come within the grasp of the patent? As the Thurman specification and claim contain no suggestion of the theory and means of the Thurman device in the Nation suit, whereby infringement of the Nation patent was avoided, it is immaterial where or how appellant learned to make its present machine.

[2] II. Patent No. 690,084. From the statement of the case it will be perceived that appellant's handle is an infringement of the claims, unless regard be given to the words thereof "substantially as described." Applicant stated that the objects of his invention were to provide a handle which could be locked in adjusted positions, and which should be provided with a downward extension ending in a roller, whereby when the handle was locked in a lowered adjustment the rear edge of the casing would be fixedly held off the floor. "With these objects in view the invention consists in the construction, arrangement, and combination of the several parts, all as will hereinafter be described and afterward pointed out in the claims." Thurman made no disclosure and oath, as foundation for a claim, that he was

the inventor of a generic combination of pneumatic-cleaner casing, yoke pivoted to the casing, hollow handle fastened upon the yoke, and flexible air-conduit from the lower end of the handle to the butt of the nozzle. If he had made such a claim, it would have been the duty of the Patent Office to reject it, as we do now, on reference to Burger. For the claims in suit to have any validity, in view of the statement of the nature and scope of the invention made in the specification and particularly in view of the prior art, the words "substantially as described" must be taken to limit the claims to a structure which will accomplish the stated objects of the invention in substantially the manner described in the specification. State Bank v. Hillman's, 180 Fed. 732, 736, 104 C. C. A. 98; Pope Mfg. Co. v. Gormully & J. Mfg. Co., 144 U. S. 248, 253, 12 Sup. Ct. 641. 36 L. Ed. 423; Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 568, 18 Sup. Ct. 707, 42 L. Ed. 1136; Singer Mfg. Co. v. Cramer, 192 U. S. 265, 284, 285, 24 Sup. Ct. 291, 48 L. Ed. 437. So limited, the claims are not infringed. Appellant has the old, common swinging handle, which Burger had already proved could easily be adapted to an air-cleaner by making the handle hollow and providing a flexible hollow connection from it to the nozzle.

The decree is reversed, with the direction to dismiss the bill for want of equity.