UNITED STATES FIRE ESCAPE COUNTERBALANCE CO. v. JOSEPH HALSTED CO.

(District Court, N. D. Illinois, E. D.   January 28, 1917.)

No. 30386.

1. PATENTS ⚙⟿328—VALIDITY AND INFRINGEMENT—FIRE ESCAPE APPARATUS.
   The Cowles patent, No. 705,042, for a fire escape apparatus, which relates to the lower movable section of a fire escape having a pivotal support and means, consisting of an automatically shifting counterbalancer, for holding such section horizontal when in the raised or inoperative position, discloses invention and covers a meritorious and efficient device, and is entitled to a liberal construction and a considerable range of equivalents.   Claims 1, 2, and 3 also *held* infringed.

2. PATENTS ⚙⟿165—CONSTRUCTION AND SCOPE—WORDS OF LIMITATION.
   A patentee is not limited by a particular description of his device in the patent, where it is expressly stated to be the preferred form of construction.

In Equity.   Suit by the United States Fire Escape Counterbalance Company against the Joseph Halsted Company.   On final hearing. Decree for complainant.

Brown, Nissen & Sprinkle, of Chicago, Ill., for plaintiff.
John W. Hill, of Chicago, Ill., for defendant.

SANBORN, District Judge.   Infringement suit on John T. Cowles patent, No. 705,042, issued July 22, 1902, for a fire escape apparatus. If the patent is assumed to be valid, two questions are presented: Whether claim 2, relating to the shifting counterweight, is broader than the real invention, and, if not, whether that claim is infringed; and whether claims 1 and 3, relating to the lateral support of the side of the ladder opposite to the counterweighted side, are infringed.

[1]   The device is thus described by Mr. Smythe, plaintiff's expert:

"Prior to the invention of the patent in suit it was customary to employ as the lower section of the fire escape a pivoted stair or ladder, the free end of which was kept elevated by suspending it by means of a cable, to the other end of which a counterweight was attached.   But this arrangement was unsatisfactory, as the cable was apt to break and let the lower section or ladder fall, thus endangering the safety or lives of those who might be on or beneath it.   The difficulty lay in the slender and relatively fragile character of the connection between the two heavy parts of the lower section—the pivoted step or ladder and its counterweight.   This difficulty the inventor, Mr. Cowles, obviated in the form of fire escape set forth in the patent in suit and defined in the claims.   Instead of providing for holding up the free end of the pivoted section by means of a counterweight connected with the free end by means of a suspensory cable, Mr. Cowles employs a counterbalance that is rigidly secured to the frame of the movable step or ladder, so as to constitute, in effect, an integral part of it.   With this arrangement the danger is obviated of the two parts of the movable section parting company and falling.   In its operation, the lower movable section of the fire escape is adapted alternatively to stand in two positions.   When it is not in use it is required to stand in a substantially horizontal position at the second floor level, in order to avoid obstructing the passageway beneath it, and in order to cut off access to the building; and when it is in use it is required to stand with its free end resting on the ground.   It is desirable that the movable section shall stay in

each of these alternative positions of itself and without the use of any extraneous mechanism for locking it in the position to which it may have been moved. This desirable feature Mr. Cowles has secured in the structure disclosed in the patent in suit, by so arranging the counterbalance part of the structure and adapting it to the other parts of the movable section that the counterweighting force of the counterbalance automatically adjusts itself to the position of the ladder, so that when the ladder is down in its operative position the counterweighting effect is decreased to the point where the weight of the free or forward end predominates and thus holds the ladder down, and so that when the ladder is moved in its horizontal or inoperative position the counterweighting force of the counterbalance is increased to the point where it predominated over the weight of the other end of the ladder, and thus holds the ladder up in its horizontal position. In referring to this feature of the fire escape section illustrated in the patent in suit, the specification says that the movable section has a shifting counterbalance arrangement 'whereby when the escape is in raised position it will be securely held in such position and whereby when it is pulled down in operative position the counterbalance will shift automatically so as to hold it in operative position until it is again raised into horizontal position.' "

The common "teeter board," used by children in play, will roughly illustrate both plaintiff's and defendant's construction. The ladder and counterweighted part, which form the horizontal floor connecting with the second story door or window from which exit is made, are in a single section, trussed or braced so as to give strength, and pivoted near the center of gravity. The normal position of the fire escape is its inoperative one, and is horizontal. When a person steps from the counterbalance end to the upper stair of the ladder, the latter will descend until it rests on the ground. The ladder will remain in this position, whether there is any weight upon it or not, but may be readily pushed up by hand, and with the aid of the counterbalance slowly raised to normal position. In the preferred form of the patent device this result is hastened by a ball inclosed in a sleeve or cylinder secured to the counterbalance at such an angle that when the ladder is approaching the ground the ball will roll towards the pivot, and thus move the center of gravity a little in the same direction. When the ladder is lifted up, and reaches a certain point in its ascent, the ball will roll away from the pivot and assist in the operation of bringing the ladder and platform to a normal position. In defendant's form the ball and cylinder form is omitted, and a like result obtained by lowering the pivotal point or fulcrum.

Defendant takes the position that its device has no "adjustable counterbalance." The counterbalance in its fire escape is a solid piece of iron, without any bodily shifting part. Plaintiff does not claim that the counterbalance itself is adjustable, but that the weight or center of gravity is a shifting or movable one. As plaintiff's expert says:

"It is done, * * * not by employing counterweights that actually slide or roll along the counterbalance arm, but by so placing the counterbalance weight on the structure that in the swinging of the step or ladder about its pivot rod the weight of the counterbalancing portion moves towards or away from the vertical plane of the pivotal point at a rate at which the weight of the other end of the section moves with respect to the vertical plane of the pivot, thus changing the 'effective weight of the counterbalance' as it moves, and making its weight predominate in effect when the ladder is in its horizontal position, and the weight of the ladder, or the ladder end of the section, to predominate in effect when the section is moved down."

It is evident from this that it is the weight or gravity, not the counterbalance as a physical substance, which shifts, so that defendant's structure does not read on claim 4. It is a "shifting counterbalance" which the patentee describes as one of the objects of his invention. After describing the old form of fire escapes, in which the weight of the movable section was carried by cables, he says:

"One of the objects of my present invention is to avoid the difficulties and dangers above enumerated, and this I aim to accomplish by the construction of a lower section of a fire escape mounted upon a pivotal support and provided with a shifting counterbalance, whereby when the escape is in raised position it will be securely held in such position, and whereby when it is pulled down in operative position the counterbalance will shift automatically, so as to hold it in operative position until it is again raised to horizontal position."

He then goes on to say, in substance, that he obtains these objects, as well as those which may later appear, by means of a construction illustrated in preferred form, and that in carrying out the invention he provides that in lowering the device into operative position the cylinder containing the movable ball will be a little inclined toward the pivotal point, so that the ball counterweight will roll down to that end and reduce the effective force of the counterweight or balance, so, as to permit the section to remain in operative position without locking. When the section is raised the cylinder changes its place, causing the ball to roll over to the other end, increasing the effective force or weight of the counterbalance, and causing the ladder to remain in its horizontal position.

The only prior art which contains the principles of defendant's construction is Schwartz, No. 136,278, for lifting bridges, and this seems to be in a distinct field. This patent was not cited to the Cowles application, and the problems were entirely different. Schwartz designed a short, strong bridge for a canal, and used a counterweight, much like that of defendant, to hold the bridge in raised position and allow boats to pass beneath. Its normal position was horizontal for the passage of teams and loads. Necessarily it was of very strong and massive construction. The Cowles fire escape, on the other hand, must be attached to the side of a building, necessarily light, though strong. Its normal position would be out of use, held up horizontally, ready for an emergency, to be used by frightened people, who could not be expected to do anything more than get upon it. The Schwartz bridge is worked by a windlass; but a fire escape, which is not automatic when weight is put on it, but requires to be operated, is of little use. The problems were so distinct that Cowles was not bound by anything in the bridge art.

It follows that Cowles was the first to solve the fire escape problem, and if he has not limited himself to a bodily shifting element, there would be no difficulty in finding infringement of claim 2, regarding the shifting counterweight. The invention is a meritorious one, highly efficient and commercially successful, deserving a liberal construction and considerable range of equivalents.

[2] It is plain that the purpose of the inventor is to increase the weight of one section after the other, so as to keep the device in either

one of the two positions. He prefers the ball and cylinder form, but shows no purpose to disclaim any other form in which the invention may be embodied, because he expressly says that the one described is the preferred form. The law gives him the advantage, even if he does not claim it. Winans v. Denmead, 15 How. 330, 14 L. Ed. 717, approved in Western El. Co. v. La Rue, 139 U. S. 601, 11 Sup. Ct. 670, 35 L. Ed. 294, United States v. Société Anonyme, 224 U. S. 309, 32 Sup. Ct. 479, 56 L. Ed. 778. This preferred form is not essential to the operation of the ladder, as shown by the defendant's form. Werner v. King, 96 U. S. 218, 24 L. Ed. 613. Unless it can be seen that the ball and cylinder form constitutes the very gist and fundamental theory of the invention, a claim for "means comprising an adjustable counterbalance," as in claim 2, is not too broad. State Bank of Chicago v. Hillman, 180 Fed. 732, 104 C. C. A. 98; Burroughs Adding Machine Co. v. Felt & Tarrant Mfg. Co., 243 Fed. 869, —— C. C. A. ——.

The patentee says he accomplishes his object by a shifting counterbalance, one which will shift automatically, and that the ball and cylinder is his preferred form. Defendant has a shifting counterbalance, described in the Seymour patent, No. 1,015,645, in which the same result is secured by the very simple and ingenious means of lowering the pivotal support.

It is necessary now to consider whether defendant's form is the mechanical equivalent of plaintiff's; whether it has merely changed the form while retaining what Cowles really discovered, the shifting of gravity from one side of the pivotal plane to the other. In both the center of gravity is shifted to and from the vertical plane of the pivoted support. In both there is a shifting counterweight, in the sense of a moving avoirdupois rather than a bodily sliding piece of metal. Plaintiff increases the effective force of the counterweight by a ball and cylinder construction as his preferred form, while defendant secures the same result by the different means of lowering the pivotal support. If a plank is fulcrumed at its center of gravity, and the pivot is placed as high as the center or top of the plank, the latter will stand in almost any position, with a slight tendency to keep on going down at that end which is lowered by hand. If the pivot is placed vertically above the middle of the plank, this tendency will be lessened, and if placed vertically below the middle it will be increased. The last position illustrates just what the defendant has done. It has put the pivot two or three feet beneath the lateral center plane of the structure, so that when the step or ladder part is lowered from the horizontal it will keep on going down until it rests on the ground. In like manner, when the ladder is raised to a certain height, the counterbalance end will keep on going down until the structure is horizontal, and there it will stay. The "effective weight" has been thus transferred by means of the position of the pivot with the same result gained by Cowles with the bodily moving ball. Such gravity shifting is what he discovered, and illustrated in a different preferred form. In the language of one of the decisions above referred to, he described "what he conceived to be the best form of his invention, and contemplated that it could be repre-

sented in other forms and proportions. This, however, was unnecessary, for the law would secure him against imitation by other forms and proportions." 224 U. S. 309, 32 Sup. Ct. 479, 56 L. Ed. 778, supra.

In his preferred form the patentee to some extent makes use of the above-described tendency to shift the center of gravity to and from the vertical plane of the pivot, since the fulcrum is slightly below the lateral gravity center of his structure; though he relies mainly on the sliding ball. The defendant by lowering the fulcrum relies on the same tendency, and upon nothing else. This is the real difference in the two structures. It is evident, therefore, that defendant would not infringe a combination claim like No. 4 (not in suit), which expressly counts on "a cylinder, * * * a ball within said cylinder, means for retaining said ball within said cylinder," because it employs not only a different mode of operation but omits one or more elements of the claim. But it does infringe claim 2, calling for "means comprising an adjustable counterbalance for holding up the free end of said ladder," because the "effective force of the counterweight or balance," as described by the patentee, is shifted automatically by the operation of the defendant's device.

*The Lateral Support Feature.*—The first and third claims relate to the holding up of the ladder, so that it will not sag on the side opposite the counterweighted side. They are as follows:

"1. A movable step or ladder having a pivotal support, means for holding up the free end of said movable step applied at one side thereof, a device for aiding in the support of the other side thereof, and mechanism co-operating with the said last-mentioned supporting device for securing the same to that side of the ladder which is opposite the one which is to be supported by it, whereby the inner free end of the ladder is carried from the outer side, substantially as described."

"3. A movable step or ladder carried by a pivotal support, a counterweight applied at one side only of said step, means for supporting the other side thereof, comprising a rod subject to torsional strain and arranged to extend longitudinally alongside of the counterweighted side of the step and inwardly to the opposite side near the bottom of the step, substantially as described."

This side support feature is a simple one, which would hardly require invention apart from the adjustable balance. The second claim covers both features. Much more was made of the support on the trial than it deserved. Claim 1 counts on a device for aiding in the support of the inner side, and mechanism co-operating with it securing it to that side, by which the inner free end of the ladder is carried from the outer side. And claim 3 relies on a torsional rod along the outer side to support the inner. I think both claims are infringed by both the Channon and Smythe structures. Claim 1 sufficiently refers to the counterweight feature to make it an element of the combination, so that it is unimportant whether the side support feature is independently patentable.

There should be a decree declaring the patent valid, the three claims infringed by the Channon and Smythe structures, and for injunction, accounting, and costs.