## CONSOLIDATED MOTOR PARTS, Inc., v. NATIONAL MOTOR BEARING CO., Inc.

### No. 156.

Circuit Court of Appeals, Second Circuit.

Dec. 9, 1935.

Hoguet, Neary & Campbell, of New York City (Frank Parker Davis and Albert J. Fihe, both of Chicago, Ill., of counsel), for appellant.

Frederick S. Duncan, of New York City (J. L. Stackpole, of Boston, Mass., and Charles S. Wheeler, Jr., and A. Don-

ham Owen, both of San Francisco, Cal., of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

The decree appealed from held appellee's reissue patent No. 15,061, granted March 15, 1921, for an oil retainer, valid and infringed. The patent was a reissue of an original issue of January 14, 1919.

Appellant is a dealer selling products made by the Victor Manufacturing & Gasket Company, the manufacturer of the alleged infringing articles, and the latter is defending this suit. The principal defense is noninfringement. Another defense, however, is invalidity of the patent as a reissue, based upon an argument that claims of scope commensurate with that asserted for the claims in suit were relinquished in the prosecution of the application for the original patent, and for an absence of proof of inadvertence, accident, or mistake in the solicitation of the original patent or its inoperativeness or invalidity within the meaning of the statute. Rev.Stat. § 4916 (35 U.S.C.A. § 64). Since we hold there is no infringement established, we need not consider this defense.

Claims 8, 9, and 10 are in suit. They are:

"8. An oil retaining means including a pliant diaphragm having a sleeve extending from one side, and a ductile ring secured to the peripheral portion of the diaphragm and adapted to be expressed into secure position on a contiguous support.

"9. An oil retaining means including a pliant diaphragm having a sleeve extending from one side, and a ductile ring secured to the peripheral portion of the diaphragm and adapted to be expressed into secure position on a contiguous support and form therewith a tight, leakproof joint.

"10. An oil retaining means including a pliant diaphragm having an elongated contractile sleeve extending from one side, and a ductile ring secured to the peripheral portion of the diaphragm and adapted to be expressed into secure position on a contiguous support."

The oil retainer constructed under this patent consists of a fibrous leather member in the form of a radially flanged sleeve and a solid ring of lead recessed to receive the flange of the leather piece to which it is stitched. In the claims, the fibrous member is called a "pliant diaphragm having a sleeve." The idea of the patent is to slip the unit into an axle housing and have the lead ring against a back stop or shoulder and then to apply a set tool to expand the lead into oil tight engagement with the walls of the housing. This tool is of tubular form to go over the axle and has an annular V-shaped cross-section ridge on its inner face. The tool is driven against the solid ring of lead as it is backed up by the interior shoulder of the housing and the V-shaped tool will penetrate the lead and expand its periphery into tight engagement with the surrounding interior wall of the housing. Coil springs are set in the grooves of the leather sleeve to constrict the sleeve around the rotary shaft. The object of the invention is said to provide a novel form of expansible washer for securing the packing member in place. And tightening up the screw forces the tool inwardly against the lead washer. This will force the lead washer tightly against the end of the axle housing and will also expand the washer radially to such an extent that it will be tightly locked with the bearing.

Appellant's ring (it is referred to as a shell or cage) is stamped out of cold rolled sheet steel of light gauge and the steel armoured piece of leather which is clamped in one end of the shell. The sleeve portion of the leather it surrounds with a coil spring which is combined within the ring (shell). The latter is made oversized with respect to the internal diameter of the housing into which the device is to go. Considerable force is required to drive the device, set against the end of the housing, into it, and a flat-faced tool is commonly employed for that purpose. The effect is to contact the ring or shell as permitted by the resiliency or elasticity of the steel. The result is an oil-tight fit of the periphery of the shell with the surrounding wall of the housing. There is no expanding of the shell in engagement with the wall of the housing, and the shell is not "adapted to be expressed into secure position on a contiguous support" as required by the claims of the appellees. The structure does not lend itself to such treatment as that with which the patent in

suit deals, namely, expansion by penetration of a tool into the metal. It is the contraction of the shell that is relied upon, as permitted by the resiliency or elasticity of the steel of which it is made, and it alone brings about the oil-tight engagement between the periphery of the shell and the interior wall of the housing. This is independent of any backstop or shoulder. The appellant's steel shell when driven in, being oversize, obtains a tight engagement with the housing wall; but this results solely by reason of the elastic yield of the shell. It demonstrates that there is no equivalency of adaptation with the patented construction. The effect is different from that resulting from the appellee's structure where the solid lead ring is squashed out.

Giving the patentee a monopoly on every oversize steel washer would be far beyond that which he conceived or claimed in his patent, and this is unwarranted. State Bank of Chicago v. Hillman's (C.C.A.7) 180 F. 732. He used ductile material so it could be expanded by outside physical force and by the use of his term "expressed" (for "expanded") he was referring to the ductility not to the resiliency of the metal used.

The appellee's expert Miller explained the difference between a seal of the patent in suit and the appellant's when he referred to the ductile character of the lead as not only permitting ready expansion of the solid ring, but being adapted to fill up any imperfection in the housing wall. He recognized the difference between lead and steel, saying there is resiliency to a steel shaft, none to lead. There is no equivalency between the two structurally or functionally. Moreover, it appears that the earlier manufacturers under the patent in suit experimented with brass and steel and abandoned them "because we could not market a thing of that kind." Miller's testimony shows they did not pursue the idea of establishing a seal by driving in an oversize ring, and that after their experience, they turned to the use of lead that would lend itself to ready expansion whereby an undersize ring could be used.

The court below included in its decree several forms of appellant's bolted on constructions. These devices were bolted against the end of the housing. Appellee's position in including these in its charge of infringement is inconsistent with its exclusion of the other bolted-on forms. Nothing whatever supports the decree of infringement as to these bolted-on forms. Apparently, on the argument, the appellees, relied not upon these, but upon the forms which are designed to be secured within the housing by being driven in oversize. All are of the cold-rolled steel shell type, but they have, as pointed out previously, clear distinctions from the concept of the patent in suit.

Particularly is this true in view of the disclosure in British patent No. 24,662 granted in 1913. This was for an oil retainer composed of a recessed metal ring and a pliant diaphragm or cup leather which was secured to the ring, the whole being adapted to tightly fit in a housing. Its stated object was to "provide a simple self-contained washer device ready for application to an engine which will prevent leakage even in cases where the pressure on one side of the washer fluctuates, such as is the case in a two-stroke internal combustion engine of the crank case compression type." The self-contained washer device holds the compression of gas in the crank case and prevents leakage of lubricant along the shaft or the housing wall. This device was manufactured in England and used publicly in this country at an early date and prior to the patent in suit. While the appellee's invention may have departed from the teachings of the British patent, by employing a soft metal, such as lead, adapted to respond to tool action by expanding or expressing into tight engagement with a surrounding wall, this would not entitle it to a monopoly to include the appellant's device, for it employs steel stamping for its ring and oversizes it to get a tight fit by the forcible driving in of this ring and its elastic contraction. The New Departure Bulletin, January, 1915, taught the employment of a press fit oil-tight flanged steel stamping in oil retainers. These stamped steel washers have a periphery flange fitting the housing wall. The Bulletin says, "There was no better known or effective method of keeping oil from leaking out," and it contains a series of illustrations showing a number of oil retaining methods secured at random and known to give satisfactory results in practice. "In a number of cases felt washers form an effective barrier against passage of oil along the shaft." The stamped steel

100

washers holding the felt must necessarily be oil-tight with the housing to be effective.

This condition of the prior art requires us to hold that the patent in suit is not entitled to an interpretation so broad as to embrace the construction of the appellant, employing oversize steel stamping carrying cup leathers and designed to be applied to the housings with a drive fit. Nor does the patent cover the bolted-on construction.

There was no infringement and the bill will be dismissed.

Decree reversed.