# WESTERN ELECTRIC COMPANY *v.* LaRUE.

APPEAL FROM THE CIRCUIT COURT ·OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

No. 279.  Argued April 1, 1891. — Decided April 13, 1891.

A telegraph sounder constructed under letters patent No. 352,317, granted
November 9, 1886, to Charles D. Haskins, infringes the third claim of
letters patent No. 270,767 for a new and useful improvement in telegraph
keys, viz., " The combination, in a telegraph key, of the lever ful-
crumed upon the torsional spring, with the adjusting screws H H', for
regulating the amplitude of the lever movement and the retractile resis-
tance of the torsion-spring, substantially as described."

While the promotion of an old device, such, for instance, as a torsional
spring, to a new sphere of action, in which it performs a new function,
involves invention, the transfer or adaptation of the same device to a
*similar* sphere of action, where it performs substantially the same func-
tion, does not involve invention.

*Winans* v. *Denmead*, 15 How. 330, affirmed and applied.

THIS was a bill in equity brought by LaRue, plaintiff in the
court below, for the infringement of letters patent No. 270,-
767, issued to Edgar A. Edwards, January 16, 1883, for a new
and useful improvement in telegraph keys.

In the specification the patentee stated that his invention
related " to telegraph keys or instruments used for transmit-
ting telegraphic signals, and is an improvement on the well-
known Morse key, being in substituting for the trunnions or
pivots upon which the lever vibrates a torsional spring or strip
of metal."    After describing the mechanism, as illustrated by
his drawings, he made a further statement, as follows : " When
a telegraph key is constructed as herein described, the side or
lateral movement is reduced to a minimum.    The adjustment
of trunnion set screws is obviated.    The ·torsional metal
springs will not wear out, but last indefinitely.    The adjusting
screws H H' serve the purpose of regulating the amplitude of
the lever movement, and also serve the· purpose of regulating
the retractile resistance of the torsion-spring.    By this arrange-
ment a secondary retractile spring to resist the downward

movement of the contact-lever is not necessary. In ordinary telegraph keys a retractile spring is always supplied to regulate the force required to depress the lever, as well as pivots or trunnions on which the lever vibrates. In my invention the torsional spring not only takes the place of the pivots or trunnions, but when used in connection with the adjusting screws H H', takes the place of the ordinary retractile spring. The construction of the key is thus simplified and cheapened by discarding one of the hitherto necessary features, viz., the retractile springs. I do not limit myself to the application of torsional springs to telegraph keys alone, as it is obvious the torsional strip or spring may be applied to other electrical instruments. Thus it may replace the pivots or trunnions of the relay and sounder."

The defences were, in brief, anticipation and non-infringement. Upon a preliminary hearing in the court below an injunction was granted, 28 Fed. Rep. 85, and upon the final hearing, 31 Fed. Rep. 80, plaintiff obtained a decree perpetuating the injunction, and for $110 damages for the infringement of the third claim of the patent, which reads as follows: "The combination, in a telegraph key of the lever fulcrumed upon the torsional spring, with the adjusting screws H H', for regulating the amplitude of the lever movement and the retractile resistance of the torsion-spring, substantially as described." From this decree an appeal was taken to this court.

*Mr. George P. Barton* for appellant.

*Mr. Arthur v. Briesen* for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The invention covered by this patent consists in the use in a telegraph key of a flat strip of metal supported at either end upon posts by means of adjustable screws and to the centre of which the lever is fastened. The torsional action of this piece of metal serves as a spring support for the lever. The main object of the invention is the substitution of this torsional spring for the ordinary pivotal support previously used, which consisted

of tapering pivots or gudgeons projecting from the sides of the lever into the bearings. The testimony indicates that the pivots require very exact construction and adjustment; that they are apt to wear loose in their sockets; and that inexperienced operators are apt to turn the screws, which carry these sockets too far or not far enough, thereby rendering the motion of the lever either too difficult or too easy. For this somewhat objectionable pivotal support, the patentee substitutes a flat torsional spring, fastened at either end by ordinary screws to the top of posts or supports. Upon the middle of this spring is riveted the lever of the key, which carries regulating screws for controlling the extent of its vibrations. The specification describes the manner in which, by means of this torsional spring, the lever is enabled to play freely between its points of contact without the use of the ordinary retractile spring.

The defendant is making a telegraph sounder under letters patent No. 352,317, granted November 9, 1886, to Charles D. Haskins, an employé of the defendant company, who had previously superintended the construction of keys under the direction of plaintiff LaRue, and was consequently familiar with his device. In this patent Haskins states the object of his invention to be "to provide convenient means for supporting the armature and armature-lever in the proper position relative to the electro-magnet and to dispense with the employment of trunnions or a pivoted support," and admits that "it has heretofore been proposed to support a lever of a key or an armature upon a flat torsional spring." The following extracts from his specification (omitting the letters) are pertinent in connection with the question of infringement: "A spring or plate of resilient metal is attached at its central part to the lever by means of a screw, or in any other convenient manner; the ends of this spring are respectively secured to the posts by screws. . . . The lever is preferably not dependent for its retractile force upon the [torsional] spring, although it may be so, but is assisted by a coil spring extending from an arm secured to the lever, preferably immediately beneath the spring C. . . . The invention has been described in connection with a telegraphic sounder; but it is evident that the torsion-

spring may be applied to the armature-lever of any telegraphic receiving-instrument, or to the lever of any telegraphic key, without departing from the spirit of the invention." The "torsional spring," or, as he sometimes terms it, the "flat spring," or "flat supporting-spring," is made an element in each claim of his patent.

So far as the testimony discloses, LaRue was the first to apply the principle of the torsional spring to telegraphic instruments, although springs of similar description had been previously used in clocks, doors, and perhaps some other articles of domestic furniture. Prior to his invention, telegraph keys were pivoted upon trunnions, and were regulated in their movements either by a coil spring, as shown in the old style of Morse key, or by a flat steel spring to which they were riveted, as in the old style of Western Union key, or the key itself was constructed in the form of a flat spring riveted at one end to the bed or plate, as shown in the Warner Spring Lever Key and in the Exhibit Spring Lever Key.

The Pole Changer, which is an instrument used by telephone companies for the purpose of calling up their subscribers, consists of a lever which vibrates back and forth by the aid of a flat spring, to which it is attached in much the same manner as the pendulum of an old-fashioned clock is connected with the spring upon which it swings. There is also a flat piece of metal which is attached to the armature, and stands vertically when the instrument lies upon the table, and which has apparently a certain torsional action; but it is evidently not depended upon for anything more than a supporting fulcrum for the armature and lever. It is stated by experts to exert some retractile force, but not enough to make the instrument operate in the way it is designed to.

The Exhibit Adjustable Torsional Spring is not the flat spring of the patent, nor has it the adjusting screws, nor the supporting posts with the fastening screws, nor in fact any of the features of the patent in suit. It is merely a wire attached to two supports, across the centre of which, between the supports, a bar or lever extends, which is attached to the wire and is supported thereby. But the ends of this wire pass through

comparatively large holes in the end supports, and thereby have, considerable freedom of movement. The very fact that the holes are larger than the wire indicates that the wire can exert no torsional force. It is a crude and apparently imperfect device, and contains no suggestion of the flat torsional spring peculiar to the patent in suit. Indeed, there is nothing in any of these exhibits which shows the use of a torsional spring in a telegraphic instrument, and while the invention does not seem to be one of great importance, we think the adaptation of this somewhat unfamiliar spring to this new use, and its consequent simplification of mechanism, justly entitles the patentee to the rights of an inventor.

The question of infringement turns upon the construction to be given to the third claim of the patent, which is, in terms, for the combination, in a telegraph key, of a lever fulcrumed upon a torsional spring, with adjusting screws for regulating its movement. If this claim be limited strictly to a telegraph key, by which is understood the instrument which is used at the office of transmission for sending off messages, then it is clear that defendant does not infringe, since it makes use of a similar combination only in connection with a telegraph sounder, or instrument used at the receiving office for delivering or enunciating the message. It is evident, however, that both of these patentees understood that the combination described in their patents could be used in either connection, since Edwards says in his specification that he does not limit himself "to the application of torsional springs to telegraph keys alone, as it is obvious the torsional strip or spring may be applied to other electrical instruments. Thus it may replace the pivots or trunnions of the relay and sounder." Haskins also admits that "it has heretofore been proposed to support a lever of a key or an armature upon a flat torsional spring," and says that his "torsion-spring may be applied to the armature-lever of any telegraphic receiving-instrument, or to the lever of any telegraphic key, without departing from the spirit of the invention."

The use of the combination is practically the same in both instances. There are the same elements of a lever fulcrumed

upon a torsional spring, and adjusting screws for regulating the amplitude of the lever movement, and the retractile resistance of the torsional spring. They are used for purposes which differ principally in name. The key transmits the message, the sounder receives it. The material part of the key is a lever which completes and breaks an electric circuit; the sounder consists merely of a lever which completes and breaks a magnetic circuit. In both cases, the lever is riveted to and supported by a flat torsional spring, which is itself supported at its ends upon upright posts, to which it is fastened by screws. The object of the spring in each instance is to allow the lever to play back and forth between the exceedingly narrow limits fixed by the set screws. The employment of this spring in connection with the sounder is such a new or double use as would occur to an ordinary mechanic who had seen the Edwards key in operation. It brought into play no faculty of invention. While the promotion of an old device, such, for instance, as a torsional spring, to a new sphere of action, in which it performs a new function, involves invention, the transfer or adaptation of the same device to a *similar* sphere of action, where it performs substantially the same function, does not involve invention.

Against this new and analogous use of his combination, the patentee is as much entitled to protection as if the word "sounder" had been expressly inserted in his claim. Since the case of *Winans* v. *Denmead*, 15 How. 330, it has been the settled doctrine of this court, as expressed in the opinion of Mr. Justice Curtis, p. 343, that "the patentee, having described his invention and shown its principles, and claimed it in that form which most perfectly embodies it, is, in contemplation of law, deemed to claim every form in which his invention may be copied, unless he manifests an intention to disclaim some of these forms." This is practically restated in different language in subsequent cases, and amounts to a declaration that the application of the patented device to another use, where such new application does not involve the exercise of the inventive faculty, is as much an infringement as though the new machine were an exact copy of the old. *Sewall* v.

*Jones,* 91 U. S. 171, 183; *Howe* v. *Abbott,* 2 Story, 190; *Walter* v. *Potter,* Webster Pat. Cas. 585.

Some stress is laid by the defendant upon the fact that the "circuit-breaking" lever is made an ingredient of the first, second and fourth claims of the patent, and that as the sounder has no circuit-breaking lever, but only an armature-lever, there is no infringement. Assuming, however, what as a matter of fact seems doubtful, that the lever of the sounder is not a circuit-breaking lever, the objection loses all its force in view of the language of the third claim, the only one found to be infringed, in which the limitation of the circuit-breaking lever is omitted, and a "lever fulcrumed upon the torsional spring" is substituted.

The further objection that in the defendant's sounder a retractile spring is used in aid apparently of the torsional spring, suggests rather than justifies an argument that the torsional spring is useless, and that the sounder would be inoperative without the retractile spring. If such were the fact, it would be an excellent reason for discontinuing the use of the torsional spring, and thereby avoiding beyond all question the charge of infringing the patent. But, notwithstanding the testimony of Mr. Haskins, that he found the best results to be obtained when the torsional spring was simply passive, allowing the armature to lie with its own weight upon the magnet, depending wholly upon the retractile spiral spring underneath to produce the upward movement, the fact seems to be that the defendant's sounder will operate about as satisfactorily if only the torsional spring is used. And even if the defendant does use the retractile spring in aid of the torsional spring, it could not thereby escape the charge of infringement. The object of the torsional spring is not only to do away with the necessity of a retractile spring, but to substitute for the ordinary pivotal bearings the torsional support. Giving Haskins's testimony its full weight, it still remains uncontradicted that he does use the torsional spring as a substitute for the trunnions or pivots theretofore used to support the lever.

The claim that defendant does not use the adjusting screws is equally without foundation. Indeed, this suggestion is dis-

posed of by defendant's own expert, who testifies to finding adjusting screws having a relation to the sounder similar to that of the screws H H' to the lever of the key in the patent, but he says that in the sounder they did not appear to have any effect upon the retractile force applied to the lever. It is evident, on examination, that their functions are practically the same in every particular.

The last defence of want of utility is also fully met by the fact that Haskins, an employé of the defendant, after the commencement of this suit, took out the patent for a telegraph sounder, the main element of which is the torsional spring of the Edwards patent, and that defendant, upon the accounting, stipulated that a decree might be entered for a royalty of ten cents apiece, on eleven hundred sounders made and sold by the defendant embodying the Edwards invention. Under such circumstances, it does not lie in the mouth of the defendant to claim that the invention is useless. Walker on Patents, § 85; *Lehnbeuter* v. *Holthaus,* 105 U. S. 94; *Morgan* v. *Seaward,* 1 Webster Pat. Cas. 170.

The decree of the court below is                         *Affirmed.*