BRAY et al. v. UNITED STATES NET & TWINE CO. et al.

(Circuit Court, S. D. New York.    December 19, 1895.)

1. PATENTS—INVENTION—FLY-BOOKS FOR ANGLERS.
    The Bray patent, No. 333,384, for an improvement in fly-books for anglers, consisting in a combination wherein the principal feature is a coiled spring which, by compression between the coils, holds the snells straight and in such a manner that each can be removed without disturbing its neighbor, discloses patentable invention.

2. SAME—EQUIVALENTS.
    A coiled spring is not necessarily the mechanical equivalent of a leaf spring; and its substitution for the latter may involve invention, where it does not perform the usual functions of a coiled spring, and the combination produces a new and beneficial result.

This was a suit in equity by Mellen Bray and others against the United States Net & Twine Company and others for infringement of a patent for an improvement in fly-books for anglers.

Odin B. Roberts, for complainants.

Frank v. Briesen, for defendants.

COXE, District Judge.    This action is based upon letters patent, No. 333,384, granted to Mellen Bray, December 29, 1885, for an improvement in fly-books for anglers.    The object of the invention is to prevent the snells attached to the flies from becoming set in coils and to keep them straight and ready for use whether they be long or short.    This is accomplished by an arrangement which enables the angler to place his flies in the book and remove them therefrom quickly and without disarranging the other flies which the book may contain.    The invention is sufficiently described in the claims, as follows:

"1. A page for carrying artificial flies, having a catch or catches extending across the page, to hold the hooks, and provided with a coiled spring, parallel to the line of said catch or catches, to receive and hold the gut between its coils, substantially as described.

"2. A page for carrying artificial flies, provided with a raised catch or catches extending across the page, to hold the hooks, and further provided with a coiled spring parallel to the line of said catch or catches, to receive and hold the gut between its coils, substantially as described.

"3. A page for carrying artificial flies, having a catch or catches extending across the page, to hold the hooks, and provided with a coiled spring parallel to the line of said catch or catches, to receive and hold the gut between its coils, said spring being free to hove laterally on a support passing through it, substantially as described.

"4. A page for carrying artificial flies, provided with a raised catch or catches extending across the page, to hold the hooks, and further provided with a coiled spring, parallel to the line of said catch or catches, to hold the gut between its coils, said spring being free to move laterally on a support passing through it, substantially as described."

The defense is lack of invention.    Infringement, if not admitted, is conclusively proved.    The elements of the claim considered separately are old but the combination is new and performs new functions and produces better results than anything which preceded it. The invention, of course, is not a great one, but Bray has placed in the hands of anglers the device for which they had long been look-

ing and had not found before. His book is simple, convenient, easily and quickly operated and prevents the aggravating snarls which often, at the most exciting moment, disarrange the tackle of the most expert fisherman, and cause him to indulge in expressions not altogether in harmony with the precepts of the decalogue. The proof shows that the Bray book is the best in the market, that it cures the defects of previous structures and meets all the requirements of the angler.

There is no hard and fast rule by which to adjudge invention. Each case must stand on its own facts, but where it appears that the patented structure is at the head of the evolution in its particular art, that it is a marked improvement on what preceded it, that it does better work and accomplishes more satisfactory results, the court should surely be predisposed in its favor. The principal feature of the combination of the claims is the coiled spring. The inventor in 1880 obtained a patent for a fly-book showing a series of overlapping leaf springs for holding the snells. It is said that a leaf spring is an equivalent for a coiled spring and that it did not involve invention to substitute the latter for the former. This argument is pressed with ingenuity and force. At first blush it is certainly plausible, but fails when subjected to careful scrutiny. The old Bray book was a failure. The leaf springs were calculated to hold one fly each. If several flies were retained by one leaf the removal of one fly might cause the removal or disarrangement of the rest. The series of leaf springs acting in this manner is not the equivalent for the coiled spring of the patent. The latter does not perform the usual functions of a coiled spring. It performs new and useful functions in its new relation. It operates to hold the snells by compression between the coils and it holds each firmly but in such a manner that it can be removed without displacing its neighbor. The flies can be put in the book and removed from it by a single movement of the hand. In Electric Co. v. La Rue, 139 U. S. 601, 11 Sup. Ct. 670, the supreme court sustained a patent which substituted a torsional spring for a coiled or flat spring in a telegraph key, holding that:

"The adaptation of this somewhat unfamiliar spring to this new use, and its consequent simplification of mechanism, justly entitles the patentee to the rights of an inventor."

See, also, Topliff v. Topliff, 145 U. S. 156, 163, 12 Sup. Ct. 825; Loom Co. v. Higgins, 105 U. S. 580; Potts & Co. v. Creager, 155 U. S. 597, 15 Sup. Ct. 194; Du Bois v. Kirk, 158 U. S. 58, 15 Sup. Ct. 729.

In short, Bray made a new combination which produced a new and beneficial result never attained before. His book supplies a want. It has displaced the old books. Considering the limited demand its popularity has been well attested by its sales. The defendants themselves are his witnesses in this regard for they sell and mark "Patented" under a patent granted in 1893, a book which contains all the essential features of the Bray patent.

The complainants are entitled to a decree.