MARCONI WIRELESS TELEGRAPH CO. OF AMERICA v. DE FOREST RADIO TELEPHONE & TELEGRAPH CO.

(District Court, S. D. New York. July 7, 1919.)

1. PATENTS ⬿328—INFRINGEMENT OF DETECTOR FOR WIRELESS TELEGRAPH APPARATUS.

   It having been shown that the detector of the Fleming patent, No. 803,684, is also capable of use as a generator of oscillations, under the rule that a patentee is entitled to all the benefits of his invention, whether or not known to or foreseen by him, the patent *held* infringed by a generating device.

2. PATENTS ⬿176—CLAIMS FOR DEVICE AS INCLUDING REVERSIBLE FUNCTIONS.

   Where there is a capacity of reversibility in a patented device, the courts will not restrict the claim to one attribute, to the exclusion of the reversible attribute.

In Equity. Suit by Marconi Wireless Telegraph Company of America against De Forest Radio Telephone & Telegraph Company. Prior decree extended.

For former opinions, see 236 Fed. 942; 243 Fed. 560, 156 C. C. A. 258.

J. Edgar Bull and L. F. H. Betts, both of New York City, for plaintiff.

Samuel E. Darby and Samuel E. Darby, Jr., both of New York City, for defendant.

MAYER, District Judge. [1] The Fleming patent, No. 803,684, so far as concerned a detector for radio waves, was fully discussed in Marconi v. De Forest (D. C.) 236 Fed. 942, affirmed 243 Fed. 560, 156 C. C. A. 258. The effect of the decision supra of this court, as affirmed by the Circuit Court of Appeals, supra, was to accord to Fleming's invention a high place in the art.

Eight or nine years after the date of the Fleming patent—the exact dates are unimportant—Armstrong, Hogan, Waterman, Weagant, and probably other experts in the radio art, while using these devices as radio wave detectors, independently observed that the detectors possessed the function of oscillating, or, in other words, of generating radio waves. This was an extraordinary additional property or function of the so-called incandescent lamp detector, of which Fleming had no knowledge.

Claim 1 of the patent in suit reads:

"1. The combination of a vacuous vessel, two conductors adjacent to but not touching each other in the vessel, means for heating one of the conductors, and a circuit outside the vessel connecting the two conductors."

While the claim covers broadly the device when used in the radio art, yet when read with the context of the specification, it is plain that Fleming's disclosure was addressed to use of the instrumentality as a detector only. It is, however, a principle of the patent law—so well settled as not to call for citations of authority—that a patentee is entitled to all the benefits of his invention, whether or not known to or foreseen by him.

Thus the first inquiry is whether the Fleming valve, as disclosed by the patent, will oscillate when used in circuits and with instrumentalities available as of the Fleming date and of the kind and character which, upon the evidence, it would be assumed would or could have been used as of that date. The testimony of the experts and numerous demonstrations in the courtroom (some required by the court by way of extra caution and assurance) proved beyond peradventure that the two-element valve possesses inherently the same capacity for generating radio waves as is possessed by defendant's three-element device.

The only question in this connection is whether plaintiff, in order to hold this feature of the Fleming invention, may use a battery. Obviously the Fleming valve cannot oscillate unless a battery is used; but to use a battery would, of course, not involve invention, once it is determined that the Fleming valve possesses inherently the ability to generate radio waves. As counsel for plaintiff aptly say:

"One might as well ask whether a boiler could be made to generate steam without a fire under it, or whether a dynamo could be made to generate electricity without an engine to drive it."

Indeed, on this branch of the case, the question is whether, in order to make the Fleming valve oscillate, anything need be done or added which would amount to invention. As the answer to this inquiry is plainly in the negative, one necessarily returns to the proposition that, as Fleming gave the art a new instrumentality, and as that instrumentality, without inventive changes or additions, will oscillate as well as detect, he is entitled to this feature although unknown to him.

The next question is: If the two-element valve will certainly and reliably oscillate in common and well-known detector circuits of Fleming's day (Marconi or PN circuit), but will not certainly and reliably oscillate in the precise circuit shown in the Fleming patent without a

condenser, is Fleming entitled to the benefits of the device as a generator of oscillations?·

The valve was made to oscillate without a condenser, although the action in this regard is not certain and reliable; but this latter fact is immaterial. The main case has really disposed of this point, because this court and the Circuit Court of Appeals have held, inter alia, that Fleming's contribution was the device per se, which could be used in any circuits and with any instrumentalities then known to the art. Bell Telephone Case, 126 U. S. 1, 8 Sup. Ct. 778, 31 L. Ed. 863.

Indeed, the case on analysis is much simpler than when first presented. On preliminary impression there is reluctance to extend the patent to an unexpected characteristic, only observed after a considerable lapse of time by the highly skilled men who are students in the art. Yet, after all, it was Fleming who made this remarkable contribution of a wholly new device, which of itself and in its development has done so much toward the practical advance of this great art. The case is fully as meritorious as Western Electric Co. v. La Rue, 139 U. S. 601, 605, 11 Sup. Ct. 670, 35 L. Ed. 294, which, as nearly as may be, presented an analogous question.

[2] Under the authority of that case it is clear that, where there is a capacity of reversibility with the same instrumentality, the courts will not restrict the claim to one attribute, to the exclusion of the reversible attribute; and, for that matter, this case is stronger than the La Rue Case, because claim 1, supra, is broadly for the instrumentality. It is concluded, therefore, that the so-called oscillion of defendant infringes, and that the decree heretofore filed should be extended thereto, with costs.

Submit decree accordingly, not later than July 11, 1919.