## CASEY et al. v. BENNETT et al.

(District Court, S. D. California, S. D. December 31, 1924.)

No. G–117–T.

1. **Patents ⬤═328—Casey, 1,445,754, for road tractor, held valid and infringed.**

The Casey patent, No. 1,445,754, for a road tractor, being a combination of a Fordson tractor with a semi-trailer *held* not anticipated, and for a pioneer invention, which entitles it to a broad construction; also *held* infringed.

2. **Patents ⬤═226—Adoption of patentee's preferred methods not essential to "infringement."**

A patent is infringed when there is an appropriation and employment of the inventor's concept, as described in his claims, though there may not be adopted the preferred methods described in the patent.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Infringement.]

3. **Patents ⬤═236—Change of form, though an improvement, will not avoid infringement.**

Merely changing the form of a patented invention, though the change may be an improvement, will not avoid infringement.

In Equity. Suit by Henry J. Casey and the Trailmobile Company against Harold C. Bennett and Ernest W. Bennett, partners as the Utility Trailer Sales Company, and the Utility Trailer Manufacturing Company. Decree for complainants.

William R. Wood, of Cincinnati, Ohio, and Frederick S. Lyon, Leonard S. Lyon, and Henry S. Richmond, all of Los Angeles, Cal., for plaintiffs.

William L. Connor and Nolan, Rohe & Freston, all of Los Angeles, Cal., for defendants.

McCORMICK, District Judge. Suit in equity to restrain infringement of patent, serial No. 1,445,754, granted to Henry J. Casey on February 20, 1923. Casey, the patentee, and the Trailmobile Company, a corporation of Cincinnati, Ohio, the exclusive licensee within the United States, are plaintiffs, and the Utility Trailer Sales Company, a copartnership, and the Utility Trailer Manufacturing Company, a corporation, are defendants. The defenses asserted are lack of invention, no infringement, and anticipation.

[1] The specific provisions of the Casey patent, which it is alleged are infringed by defendants, are claims 1 and 3 of said patent. Claim 1 is as follows:

"1. In a road tractor, the combination with a wheeled tractor portion provided with a driving axle and guiding wheels, and a trailer provided with rearmost wheels, of flexible twofold means of connection between said two portions, one part of said connection being applied above and in front of the driving axle, and the other part of said connection being applied in the rear of and below the driving axle, with the resultant effect specified of keeping the guiding wheels always at normal engagement with the ground."

And claim 3 reads thus:

"3. In a road tractor, the combination with a wheeled tractor portion provided with a driving axle and guiding wheels, and a trailer provided with rearmost wheels of flexible twofold means of connection between said two portions, one part of said connection being applied substantially above the driving axle, and the other part of said connection being applied in the rear of and below the driving axle, with the resultant effect specified of keeping the guiding wheels always at normal engagement with the ground."

The device under consideration is a road tractor, consisting of the well-known Fordson tractor in definite combination with a semi-trailer having rearmost wheels. The problem confronting Casey was to so connect and combine the two instrumentalities that as a resultant he would produce an auto truck of simplicity, economy, and cheapness in construction and operation, wherein the distribution of the weight of the load would be advantageous both to the co-ordinated machine and to the roadbed. Prior to Casey's conception, the use of the Fordson tractor had been limited almost entirely to agricultural activities. It was designed solely for agricultural uses. It had been an efficient mechanical draft horse on the farm or in the orchard, but its utility at that time as a commercial draft instrumentality on the roads and highways was generally unknown and was also impractical.

When connected to a plow or other farm implement by its single draft bar hitch, the Fordson tractor functionated admirably; but, when attempts were made to successfully hitch or connect it directly to a loaded wheeled semi-trailer, it failed to operate satisfactorily. There was a constant tendency of the front end of the tractor to tip upward, thereby preventing the driving wheels of the tractor from developing adequate pulling power upon the loaded trailer. Traction of the guiding wheels of the tractor was impaired by the downward and backward pull, through the hitch or con-

nection with the trailer, and in consequence thereof the combination was an impotent and inefficient mechanism.

The manner by which Casey endeavored to surmount this difficulty and solve the problem of combining the Fordson tractor and a trailer with rearmost wheels into an efficient commercial transportation unit is clearly described by the patent in suit, and is best illustrated by its teachings, as follows:

"When a Fordson tractor is hitched to a plow, the draft upon the plow follows the line of a bent lever beginning at the toe of the plowshare and terminating at the forward end of the tractor. In such case, the driving wheels, located approximately at the angle of the said bent lever, are always drawn towards the earth and into gripping engagement therewith by the oblique downward pull of the plowshare. At the same time, the said downward pull has a tendency to lift the forward or steering end of the tractor. The operation of the driving wheels also contributes towards the same end. The consequent effect is to maintain a substantially uniform load upon the guiding wheels, not only without impairment, but with increase, within certain limits, of the purchase upon the ground of the tractor wheels which propel the machine. There is, however, even in plowing, a weight of load, say 2,500 pounds, beyond which the front wheels will leave the ground and cease to functionate.

"Attempts to *exceed* the use of the tractor to road service by hitching it directly to a wheeled trailer have proven unsatisfactory, for the reason that, the down-pulling load of the plow being lost, either the driving wheels, although equipped with rubber tires, fail adequately to functionate in consequence of their diminished purchase upon the ground, or they lift the guiding wheels from the ground before said driving wheels develop adequate pulling power upon the loaded trailer. That result may be accounted for by the fact that, if the trailer axle be higher than that of the driving wheels, the effect will be to apply driving power at the angle of an inverted bent lever, with the result that the operation of the driving wheels will tend to straighten the lever, and thereby lift the driving wheels out of contact with the roadbed, and cause them to slip thereon without driving effect. The obvious remedy in such a case would appear to be to lower the trailer axle; but it is found that, if that be done, the lifting tendency upon the guiding wheels will then

3 F.(2d)—41

be so augmented as to disqualify them from functioning before the driving wheels can do their work. The remedy I have found effectual is to impose excessive weight on the guiding wheels, and preferably to provide means for imposing a portion of the weight of the trailer load upon the tractor between its front and rear wheels, said means being adapted to avoid any interruption of the pulling power of the tractor upon the trailer.

"By my invention, provision is accordingly made so to combine a trailer and a tractor as to remove the tendencies referred to, and thereby to maintain, under such varied conditions as may occur in service, the traction efficiency of the machine. In accomplishing the aforesaid main object of my invention, numerous minor problems are presented for solution, and my invention is devised to that end, as hereinafter set forth."

Following the foregoing the patent describes in detail and by reference to drawings the mechanical methods employed or preferred by the claimant. That Casey was the first to solve the problem of co-ordinating the Fordson tractor with the trailer having rearmost wheels into a workable and efficient commercial transportation unit, suitable for road service, has in my opinion been clearly established by the evidence. He produced a new transportation agency, which not only lessened the wear and tear on the roads, but which also served to reduce the cost of transportation as well.

His concept, as shown by the patent and as demonstrated by the evidence in this case, was pioneer and primary. The patent is entitled to a broad construction. Adams Electric R. Co. v. Lindell R. Co., 77 F. 432, 23 C. C. A. 223; Schroeder v. Brammer (C. C.) 98 F. 880. There had been experiments by others with other types of tractors, but none of these were confronted with or had in mind Casey's problem, and certainly no one had previously conceived or developed the thought which provided and enabled Casey to effectively combine the two mentioned instrumentalities into a workable, useful, and economical commercial transportation unit.

It was by means of twofold flexible connections that Casey solved the problem. An upper connection, acting principally as a weight-imposing member, although partly as a draft and steering connection, and being applied either above and in front of the driving axle of the tractor, or substantially above the driving axle thereof, and a

lower flexible connection, to function as a draft agency, being applied in the rear of and below the driving axle of the tractor.

[2] The inventor in his patent expresses certain preferences as to the mechanical methods of attaching the two connections to the tractor and trailer. Some of these methods are not literally followed by defendants in their construction. But a patent is infringed when there is an appropriation and employment of an inventor's concept as described in his claims, although there may not be adopted the preferred methods of attachments which the inventor describes in his teachings. Winans v. Denmead, 15 How. 330, 14 L. Ed. 717; Western Electric Co. v. La Rue, 139 U. S. 601, 11 S. Ct. 670, 35 L. Ed. 294.

I am persuaded by the evidence to find that the construction of the defendants as exhibited to the court and described by the testimony is a substantial embodiment of Casey's concept as disclosed by claims 1 and 3 of the patent. The twofold connections are made in substantially the same manner and for the same purposes. The lower connection, in so far as function and purpose are concerned, is identical. The results claimed by Casey are attained in the same way by the Utility construction, although by instrumentalities that have probably improved forms. The only difference discernible to me between the Casey patent and the Utility construction is in the mechanical method of diffusing the weight, which is imposed upon the tractor by the upper connection. The weight of the upper connection is applied in substantially the same manner, at substantially the same place, and is intended to and does perform the same function, and accomplish the same result; but in the Utility construction, because of a modification in the shape of the upper connection, whereby weight is suspended on pins below the housing of the rear axle by means of yokes, there is probably an improvement. In the Casey patent the load is superposed.

[3] Merely changing the form of an invention will not avert the charge of infringement, although the change may be an improvement. As long as the inventor's idea and concept is utilized, and the main characteristics of the patent retained there will be infringement of a pioneer patent. The distinguishing characteristics of Casey's invention are not changed in any substantial manner by the Utility construction. All of the elements of the invention are adopted, and the combination fabricated by the defendants is a fac simile of the invention. National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 F. 693, 45 C. C. A. 544.

The only remaining questions are whether the defense of anticipation has been established—whether the defendants' claim that Casey invented nothing because of the state of the prior art has been sustained by the evidence. I find such defenses have not been established. "A machine or combination which is not designed by its maker, nor actually used nor apparently adapted to perform the function of a patented machine or combination, but which is discovered in a remote art, and was used under radically different conditions to perform another function, neither anticipates nor limits the scope of the patent." National Hollow B. B. Co. v. Interchangeable B. B. Co., supra.

I have previously mentioned the state of the art at the time of Casey's concept. The Fordson tractor was then a recent creation. It is yet sui generis. The record convinces me that its practical use as a commercial draft horse in combination with a semi-trailer was not appreciated or demonstrated until Casey's inventive faculties were set in motion.

Several earlier patents have been presented by defendants as tending to prove anticipation. Many of them were considered by the Patent Office and were examined in connection with Casey's application for the patent in suit. Specific mention is made of some of them in the file wrapper of the Casey patent. Only one pertained definitely to the Fordson tractor, and an entirely different problem confronted the applicant and inventor in that case. The Patent Office was of the opinion, after examination and analysis, that none of the earlier patents were sufficient to interfere with or to defeat Casey's claims. This conclusion of the Patent Office, while not controlling on the court, is very persuasive, and is tantamount to prima facie evidence against the claim of anticipation, in so far as all such patents are concerned. I have satisfied myself, however, by an independent study of all patents introduced, that the Casey concept and claims are not anticipated or affected by any of them. In my opinion, all of them relate to and concern substantially different instrumentalities or mechanical problems than those which concerned Casey.

It is worthy of note, in considering the defendants' claim of anticipation and lack

of novelty, to advert to the evidence in this suit, which shows that until the defendants inspected, examined, and studied a construction of the Trailmobile Company, which is an admitted embodiment of the Casey patent, they had never made any effort or experiment to solve the problem of efficiently combining a Fordson tractor with a semi-trailer, so as to form the two into a commercially successful transportation unit. Under such circumstances, the claim that Casey invented nothing has little merit as far as defendants are concerned.

A decree is ordered for the plaintiffs in accordance with the foregoing memorandum opinion, and solicitors for plaintiff will prepare the same under the rules.