## BENOIT et al. v. WADLEY CO. et al.
### No. 4527.

Circuit Court of Appeals, Seventh Circuit.

Jan. 5, 1932.

Ephriam Banning and Russell Wiles, both of Chicago, Ill., for appellants.

William F. Freudenreich, of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

Suit was brought on claim 1 of Patent No. 1,674,942, issued June 26, 1928, to Leon Benoit, covering a machine for assembling cartons such as are suitable for the reception of eggs. The court found that claim 1, the only one involved, "if valid, must be strictly construed," and, when so construed, there was no infringement by appellees' machine. Benoit is the owner of the patent, and his co-appellant is the exclusive licensee thereunder. Appellees are the manufacturer and the user of the alleged infringing machine.

Claim 1 reads as follows: "1. A carton assembling machine in which is combined means for centering a slotted carton in position to be operated upon, ejectors for moving simultaneously a plurality of partitions, one into each slot of the carton, and a single operating means for holding the carton in place and for causing advance of said ejectors, substantially as described."

Benoit said in his specifications: "This invention relates to a machine for assembling loose partitions in a carton such, for example, as is suitable for the reception of eggs. A carton of the general type for which the present machine is adapted is set forth in the Coyle Patent No. 1,327,946, * * * this being merely a suggestive construction in this connection."

The Coyle patent covered an egg box, which he described as being formed preferably of cardboard and made in a size suitable

to the requirements of trade. The device "consists of a blank which is doubled over along its longitudinal center * * * so that it may be readily folded * * * at these points when being assembled into receptacle form or when folded in the knockdown form * * * slots cut in the blank, and in these slots are disposed walls having formed in their opposite sides notches * * * and in the upper edge a slot flared out at its lower end * * *."

"The distinguishing characteristic of his device" was "partitions are not permanently connected with the sides of the main body, so that they may be folded into position * * * without bending. They lay substantially flat against the sides of the upstanding folded center of the main body, * * *."

His claim 1 read: "An egg box comprising a foldable blank forming the body of the box, and partitions individually removably mounted on the body blank foldable longitudinally within the box, and unfolding automatically when the body is extended, substantially as described."

Benoit continued the description of his invention in the following language: "The carton herein set forth consists of a blank which is doubled over along its longitudinal center and which is provided in each of its two sections with registering transverse slots through which are inserted loose partition members. As these partitions are several in number for each carton, it follows that the operation of setting these partitions in place involves considerable time and effort. It is with a view to expediting this assembly of the partitions in such a carton that the present machine has been designed."

Continuing, the applicant says: "The advantages of the present machine are that it facilitates assembly of the partition members into the carton blank. Were this operation to be performed by hand, it would be necessary to handle each of these partitions separately. With the present machine, however, all the partition members are correctly positioned in one operation. This is accomplished expeditiously and always with a uniformity which is sparing of damage to the carton."

Claim 1, above quoted, must be read in the light of these specifications and with the structure of the Coyle patent as a background.

The court found:

"The machine of the patent in suit is designed for use by the manufacturer of cartons in the manufacture of an old box of the type shown in the Coyle patent 1,327,946 of 1920, which box is composed of many separate pieces brought together by the machine of the patent in suit preparatory to placing the box in condition to be shipped to the consumer.

"The alleged infringing machine is designed for use by a consumer of egg boxes to set up ready for use boxes received in a collapsed state from the box manufacturer."

Discussing appellees' structure and the machine described in the patent, the court said [1]:

"12. Whereas the consumer employs the alleged infringing machine for opening or setting up the previously manufactured one-piece type of box, the boxes in whose manufacture the machine of the patent in suit is used must be opened and set up by hand by the consumer.

"13. The machine of the patent in suit cannot be used to set up defendants' one-piece box, nor can the alleged infringing machine be used to assemble the many separate parts of the Coyle box.

"14. The construction of the machine of the patent in suit is radically different from that of the alleged infringing machine. In the former, provision is made to hold seven stacks of partition members, and there are seven ejectors, each of which pushes the lowermost partition member from the corresponding stack into a slot in a flat folded box body that has been properly placed in the machine. In the alleged infringing machine there are no stacks of partitions, nor any ejectors; but there are seven pairs of grippers that act on the seven partitions of the complete one-piece box to swing them into and hold them in positions at right angles to the bottom wall of the box; and then a blade or bar comes down upon the longitudinal center of the bottom, pressing the bottom inwardly into a V-form, and interlocking the bottom with the partitions, to place the box in condition to receive the eggs; the machine acting only on the elements already present in the collapsed box and adding no element to the one-piece structure of the box.

"15. The machine of the patent in suit simply operates on the separate pieces of an old box, in the manufacture of the box, to perform by machinery one of several steps that were previously performed by hand, leaving the rest of the steps in the manufacture of the box in a collapsed form, and also the subsequent setting up of the box by the

---

[1] In special findings of facts.

consumer, to be performed by hand, as before.

"16. All that the machine of the patent in suit does is to insert the loose partitions in the slots of the body blank in the process of manufacturing the box; a manual operation is then required to shift the partitions and body blank relatively to each other to interlock them. The partitions at the end of these steps stand at right angles to the plane of the body blank and must be swung around by hand and laid flat against the body blank to place the box in a flattened condition; parts of the body blank must afterwards be folded by hand, as in the Coyle patent 1,327,946, before the box is ready to be shipped to consumer in a collapsed form; and the consumer must set up the collapsed box, as best he can, before he is able to put eggs into the same.

"17. It has not been shown that any machine like that of the patent in suit has ever been made or used."

Appellants' position is best stated by a quotation from two of the requested findings of fact:

"8. A comparison of the patent in suit with the cited art shows the Benoit machine to have been the first to locate a carton sheet having parallel slots, to position a set of partitions all parallel to each other opposite the slots, respectively, and to engage the partitions with the slotted sheet by thrusting the partitions through the slots at right angles to the sheet.

"9. Defendants' machine * * *, although operating upon a different type of carton, employs a sheet having parallel slots, positions a set of partitions parallel to each other and one opposite each slot in the sheet and engages the partitions with the slotted sheet by forcing the sheet toward and over the partitions, the direction of relative movement being at right angles to the plane of the slotted sheet."

Appellees, on the other hand, contend that the Benoit patent is both invalid and noninfringed.

The crux of appellants' argument, relying upon Western Electric Mfg. Co. v. Larue, 139 U. S. 601, 11 S. Ct. 670, 672, 35 L. Ed. 294, and Kennicott Co. v. Holt Ice & Cold Storage Co. (C. C. A.) 230 F. 157, is that appellees cannot successfully dispute infringement, after having appropriated the Benoit novelty, by using such novel features in a machine which differs materially in other respects or parts from the machine covered by the patent.

The rule is stated in Western Electric Mfg. Co. v. Larue, supra, as follows: " * * * the application of the patented device to another use, where such new application does not involve the exercise of the inventive faculty, is as much an infringement as though the new machine were an exact copy of the old * * *"

The law, however, equally applicable and free from doubt, requires us to so read the claim of the patent as to give it neither a broader nor a narrower scope than the invention disclosed in the patent warrants. State Bank of Chicago v. Hillman's (C. C. A.) 180 F. 732; Burroughs Adding Machine Co. v. Felt & Tarrant Mfg. Co. (C. C. A.) 243 F. 861, 868. Applying this last doctrine to the claim in question, we find three elements: (a) means for centering a slotted carton in position to be operated upon; (b) ejectors for moving simultaneously a plurality of partitions, one into each slot of the carton; and (c) a single operating means for holding the carton in place and for causing the advance of said ejectors—which are so broad and inclusive as to be meaningless, except as they are made understandable by an examination of the specifications and the drawings, in the light of which they are to be read. The specifications, above quoted, show that the machine facilitated "the assembly of the partition members into the carton blank," and that is all it did.

We quite agree with counsel for appellants that this machine might well be infringed, even though used for another purpose, or in another way, quite beyond the comprehension of the inventor. But we cannot give to the broad language used in describing the three elements an equivalency not within the scope of the inventor's discovery as he described it in his patent. In other words, where the specifications and drawings, particularly and in detail, describe the invention, the inventor cannot by the use of such a general and inclusive word as "means," broaden and extend it so as to include a machine constructed entirely differently, even though such other machine also used "means" for placing a carton in position to be operated upon, etc.

Looking to the heart of this invention, rather than to the generic terms used in the claim to describe it, we think there is much in the trial court's finding to the effect "that the machine of the patent cannot be used to set up appellees' one-piece box nor can the appellees' machine be used to assemble the many separate parts of the Coyle box."

While not by any means a complete or accurate test of infringement, it yet may be generally said that a machine does not infringe a patent covering a somewhat similar machine if, by reason of difference in the principles of construction and mode of operation, the machine of the patent and the alleged infringing machine are not so interchangeable that either will do the work of the other. We say that this is not the final test because too general. A patent may be infringed even though the machine covered by it would not do the work of the infringing machine. There must, however, be a practical standard by which infringement may be determined, based upon the use of the means, which when differently used produce other results, or the same results when used with different elements.

The Benoit machine ejects seven individual pieces from the bottom of seven individual stacks and feeds them into a separate body blank after some one has placed the blank in the machine, without effecting any change in the shape of either the body blank or the individual pieces. Appellees' machine neither employs stacks nor has ejectors to eject the individual pieces from the stacks, but bends the single blank to swing the flap thereof at a right angle to the bottom and then bends the bottom into a "V" shape. The Benoit machine holds the body blank in fixed position and also holds each partition in such a position that the partitions may enter the slots in the body blank. The body portion of the box is not held by the appellees' machine, but is left entirely free so as to permit the bottom to be bent in and the side walls to swing in toward each other.

While the carton upon which the machine operates is not named as an element of the claim in suit, it would be impossible to understand the invention without considering and understanding the carton. Moreover, the claim itself in the first four words "a carton assembling machine" invites the reader's attention to the carton upon which the machine is to act. In Schram Glass Mfg. Co. v. Homer Brooke Glass Co., 249 F. 228, 232, we had occasion to refer to the introductory clause of a claim, although it was not an element in the combination. We there said: "While it is true that this clause of itself does not describe an element in the combination, it should not for that reason be ignored. Each of the elements of the combination should be read in the light of this clause and should be modified by it. Such a clause of itself may entirely fail to supply a necessary element in a combination * * * yet it may so affect the enumerated elements as to give life and meaning and vitality to them, as they appear in the combination. * * * In so doing we are not substituting an operation for an element, nor including as an element the particular article upon which the apparatus is to work. We are merely giving to the modifying clause the same effect that would be given to an adjective or adverb that limits, enlarges, or qualifies the word it modifies."

When Benoit spoke of a carton assembling machine, he was speaking not only of a machine to assemble cartons, but of a machine to assemble a particular kind of carton, to-wit, those described in the Coyle patent, to which specific reference was made in the specifications. It was such a machine, and such only, for which Benoit was entitled to patent protection. Appellees' alleged infringement must be determined accordingly.

True, nothing is clearer in patent law than that patents are not granted on results, but for the means whereby such results are obtained. Yet, it sometimes is necessary to study the results of an operation in order to ascertain the limitations, and co-acting characteristics, of the elements in the combination—in short, to better construe the language of the claims. Had Benoit's claims so limited his means to describe the particular machine which represented his mental conception, we think no difficulty would have arisen over this question of infringement. It is by the extension of the element generally described as "means" that makes it possible for him to expand his discovery to include appellees' machine within its language. In order to ascertain whether appellees have escaped or have been caught within the language of the claim, we must look closely to the specifications and drawings, as well as to the prior art, to ascertain just what the patentable invention was and how the language of the claim should be construed. Thus studied, we agree with the district court that if validity of the claim is to be recognized the claim must be limited by, and to, the disclosures appearing in the specifications and drawings. Appellees did not infringe the Benoit invention. As we cannot extend claim 1 beyond Benoit's invention, appellees did not infringe claim 1 of the patent.

The decree is affirmed.