## RADIO CORPORATION OF AMERICA et al.
### v. ANDREA et al.
### No. 7624.

District Court, E. D. New York.
July 3, 1936.

686

Sheffield & Betts, of New York City (Thomas G. Haight, of Jersey City, N. J., and Abel E. Blackmar, Jr., of New York City, of counsel), for plaintiffs.

Darby & Darby, of New York City (Samuel E. Darby, Jr., of New York City, of counsel), for defendants.

GALSTON, District Judge.

This is a patent infringement suit in which infringement is alleged of letters patent No. 1,507,016 and No. 1,507,017, granted on September 2, 1924, to Lee De Forest. The former relates to an audion oscillator; the latter to a feed-back circuit. In Radio Corporation v. Radio Laboratories, 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163, the patents were held valid. Accordingly, the sole issue is infringement.

A stipulation of facts entered into for the purpose of the trial discloses that the defendants have manufactured or assembled superhetrodyne radio receivers in their plant in the Eastern District of New York; that they purchased from authorized sources in the open market the vacuum tubes required for the receivers; that they placed those tubes in the sockets provided therefor, connected the receiver so supplied with tubes to the electric lighting circuit, and thereafter tested each receiver in their plant; that in the course of such tests each receiver was used as a complete instrument and in the manner in which it was to be used by the ultimate purchaser, although the source of signals for the tests were oscillations locally generated in the defendant's plant rather than radio broadcast programs; also that defendants have sold, packed in a single carton (in this country for export), the receivers and the tubes separately wrapped.

It is agreed that when the tubes are inserted in the sockets of the receivers and the set is operated as intended by the defendants, claim 25 of patent No. 1,507,016 and claim 19 of patent No. 1,507,017 are infringed.

A preliminary injunction herein granted by this court was reversed by the Circuit Court of Appeals, Radio Corporation v. Andrea, 79 F.(2d) 626, 628; that court holding that the sale of the sets for export with the tubes out of the sockets was not an infringement. Judge Swan wrote: "No wrong is done the patentee until the combination is formed. His monopoly does not cover the manufacture or sale of separate elements capable of being, but never actually, associated to form the invention. Only when such association is made is there a direct infringement of his monopoly, and not even then if it is done outside the territory for which the monopoly was granted. This is the basis for the doctrine of contributory infringement, which permits the elements of a patented combination to be sold in this country with the intent that the purchaser shall make and use the invention abroad. * * * By their sales for export the defendants were guilty of neither direct nor contributory infringement."

Accordingly, there are but two questions now presented:

First, is the factory test defined in the stipulation an invasion of the plaintiff's monopoly right to the use of the patented inventions?

Second, did the defendants, through the purchase of the tubes from a source authorized by the plaintiffs, acquire an implied license to use the tubes in the combination defined in the claims of the patents?

It is contended by the defendants that the term "use" as employed in section 4884 of the Revised Statutes (35 U.S.C.A. § 40) means a use for the intended purpose of the invention; and that since the use indicated in the patents in suit, so the defendants contend, is for reception of broadcast signals, by merely testing the sets to determine operability they do not deprive the plaintiffs of any of their rights to use the inventions.

Apparently, there is, not much authority on the subject. Plaintiff cites Robinson on patents, sections 898, 903, and 904.

Now it is abundantly clear that the only purpose for which the tests were made was to determine the operability and efficiency of the set. Clearly, the use was not experimental in the generally accepted connotation of that term. It was not a scientific research or an engineering inquiry. It was not pursued in the efforts to improve the set or any element therein; nor, of course, was the test one of curiosity or amusement. It was a step which the defendants apparently deemed necessary in the manufacture and sale of their product. That such sale for export was not an infringement, as was determined by the Circuit Court of Appeals, does not compel the conclusion that the intermediate steps were in themselves lawful.

The statute does not limit the monopoly right conferred. Logically, it would seem that any use of the invention is an invasion of the patentee's rights. It has been repeatedly held that to sustain a patent it is not necessary that the patent disclose that the inventor knew of or specified all the possible uses to which his invention could be put. Deitel et al. v. La Minuette Trading Co. (C.C.A.) 37 F.(2d) 41; Western Electric Co. v. La Rue, 139 U.S. 601, 11 S.Ct. 670, 35 L.Ed. 294. It should follow then that any use is within the exclusive right of the patentee, though, of course, one can well understand that the law, not concerning itself with trifles, would ignore a mere casual appropriation for amusement or even scientific purpose. Robinson on Patents, §§ 898, 903, 904. But in the present case the defendants' use was solely commercial. Indeed, it would follow from the assembling of the parts of the set and the adjustment of the tubes therein that the defendants infringe the patents. So much seems to be indicated in Judge Swan's opinion, for he uses this significant language: "No wrong is done the patentee until the combination is formed. * * * Only when such association is made is there a direct infringement of his monopoly," etc.

That brings us to the second question involved. The defendants purchased in the open market radio vacuum tubes known as type 6A7, which were required to make their receivers operable. Some of those tubes were manufactured by the Hygrade Sylvania Corporation, a licensee of the plaintiff, others by the RCA Radiotron Company, Inc., or RCA Manufacturing Company, Inc., affiliated with the plaintiff.

Claim 25 of patent No. 1,507,016 reads: "Means for producing sustained electrical oscillations comprising an oscillatory circuit having two electrodes in an exhausted receptacle and a second circuit coupled thereto having a conducting body interposed between said electrodes."

Claim 19 of patent No. 1,507,017 reads: "In an electrical system, an evacuated vessel, hot and cold grid and plate electrodes therefor, a circuit connecting each of said cold electrodes with said hot electrode, said circuits being associated to react upon one another."

The tubes were sold by the Hygrade Sylvania Corporation with a license notice reading: "This device is licensed under patent claims of Radio Corporation of America on the device itself but only for use in (a) radio broadcast reception for entertainment and educational purposes and (b) reproduction of sound and pictures from records, to be heard or seen in the immediate vicinity of the apparatus used in such reproduction (not including transmission to, or reception at, other points of such sound and pictures) and only for private use in homes for entertainment and educational purposes. It is not licensed under patent claims on combinations of the device with other devices or elements, as for example in various circuits and hook-ups, except only for use in apparatus and systems already licensed for use under such patent claims on combinations."

All tubes manufactured and sold by the RCA Manufacturing Company, Inc., were accompanied by the following notice:

"The sale of this device carries a license under patent claims on the device itself but only for (1) radio amateur uses, (2) radio experimental uses, (3) radio telephone broadcast reception, (4) one way radio telephone broadcast transmission of entertainment or educational programs or police information, (5) electric phonograph uses, and (6) for use in connection with talking picture apparatus for the electrical reproduction of sound from records thereof, to be heard in the immediate vicinity of the reproducing apparatus.

"The sale does not carry a license under patent claims on combinations of the device with other devices or elements, as for example in various circuits and hook-ups, except only for legitimate renewals and repairs in apparatus and systems already licensed for use under such patent claims on combinations.

"This device is licensed for no other use except by written contract of sale and/ or lease between Radio Corporation of America or any of its subsidiaries and the purchaser and/or lessee."

Whether, by the purchase of these tubes, the defendant acquired an implied license, depends upon whether the tubes thus purchased could be used only in the combination defined in the patents in suit, or whether indeed any act or acts of the plaintiffs in the sale of such tubes estopped the plaintiffs from asserting that the defendants by the purchase of these tubes obtained an implied license under the patents in suit.

Was the 6A7 tube acquired by the defendants usable solely in the superhetrodyne circuit combination set forth in the patents in suit? If so, then, of course, an implied license results. As was said in Edison Electric Light Co. v. Peninsular Light, Power & Heat Co. (C.C.A.) 101 F. 831, 836, "Thus, if the article sold be of such peculiar construction as that it is of no practical use unless it be used in combination with some subordinate part covered by another patent of the vendor, the right to use the latter in co-operation with the former might be implied from the circumstances. It is a general principle of law that a grant necessarily carries with it that without which the thing granted cannot be enjoyed."

See, also, Roosevelt v. Western Electric Co. (C.C.) 20 F. 724.

On the other hand, the sale of one element of a patented combination which has other uses carries no implied license to the buyer to furnish the other elements himself and complete and use the combination. General Electric Co. v. Continental Lamp Works, Inc. (C.C.A.) 280 F. 846; Westinghouse Electric & Mfg. Co. et al. v. Independent Wireless Telegraph Co. et al. (D.C.) 300 F. 748.

The record in the case shows that when the 6A7 tube was first made available to the plaintiffs' licensees in 1933, but one use was announced to such licensees. Such use was that of a mixer converter, i. e., a tube which acts as a combined detector and oscillator.

Other uses thereafter developed. It appears that not only is the type 6A7 tube adapted to be used in circuits other than those defined in the patents in suit, but they have been so used. Thus the Pilot Radio Corporation, which holds a license from the plaintiff to manufacture receivers embodying the De Forest inventions, has used the 6A7 tube in radio receivers in circuits which do not utilize the inventions of either of the patents in suit. Information as to such use the Pilot Corporation obtained from the RCA Radiotron Corporation. The 6A7 tube was used as a mixer or first detector, while the oscillations were generated by a separate tube. The use of the 6A7 tube with its associated circuits did not operate to generate oscillations, and did not utilize the principle of feedback.

A similar use was embodied in the receiving set known as the Stromberg Carlson, model 82. In this set the 6A7 tube was used as a mixer or first detector, but was not operated as a generator of oscillations.

The type 6A7 tube was used by the E. H. Scott Radio Laboratories holding a receiving set license under the patents in suit, for the purpose of volume expansion. In such use it does not operate to generate oscillations or alternating currents and does not utilize any feedback.

The use by the Pilot Radio Corporation began in December, 1934, and was therefore prior to the filing of the complaint herein; that by the Stromberg Carlson Telephone Manufacturing Company in May, 1935; that by the Scott Radio Laboratories in the latter part of 1935.

In view of this record it would appear that no implied license could have been acquired after other uses of the 6A7 tube became recognized in the art; on the other hand, as to all purchases made by the defendants of a 6A7 tube prior to the time when no such other uses were either indicated or recognized, an implied license did result.

The plaintiff may have a decree in accordance with the foregoing opinion.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.